STATE of Tennessee, Plaintiff-Appellee,

v.

Johnny MANUS, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Feb. 1, 1982.

Application for Permission to Appeal Denied by Supreme Court April 26, 1982.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Murfreesboro, John J. Melton, Asst. Dist. Atty. Gen., Woodbury, for plaintiff-appellee.

Marshall E. Duggin, Woodbury, for defendant-appellant.

## OPINION

LEWIS, Judge.

This is an appeal by defendant Johnny Manus, a juvenile, from a jury verdict finding him to be a "delinquent child."

Defendant presents four issues for our determination. They are: (1) whether his confession was properly admitted at trial, (2) whether the verdict of the jury is a nullity for failure to comply with T.C.A. § 37–202 et seq., (3) whether the Trial Judge erred in charging the jury on the various degrees of homicide, and (4) whether the recitations in the Court's final order require a reversal.

The pertinent facts in regard to defendant's first issue, i.e., whether his confession should have been suppressed, are as follows:

Randy Galloway, an investigator for the District Attorney's office, received a call at approximately 8:45 P. M. on July 10, 1980, to come to the Sheriff's office in Woodbury, Tennessee. Mr. Galloway reported to the Sheriff's office and was told that he should go to the apartment of Ed Manus in Woodbury. When Mr. Galloway arrived at the Manus apartment, the Sheriff of Cannon County and two deputies were present. Mr. Galloway took a shotgun from the Manus apartment and returned to the Sheriff's office at approximately 9:30 P. M. Ed Manus and his son, the defendant Johnny Manus, were at the Sheriff's office when Galloway returned.

At approximately 11:30 P. M. Mr. Galloway, prior to questioning Ed Manus, informed him of his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After being informed of his Miranda rights, Mr. Manus stated that he would talk with Mr. Galloway and at that time gave Galloway the name of the person who shot Wiley Adams. Subsequently, Mr. Galloway talked with the defendant. The conversation with defendant took place at the Cannon County Sheriff's office. Present were Mr. Galloway, the Sheriff, Juvenile Judge Kenneth Banks, Detective David Grissom, Ed Manus and the defendant.

In the presence of his father, defendant was advised that Mr. Galloway wished to talk with him concerning the death of Wiley Adams. Ed Manus gave permission to Galloway to talk to his son, the defendant. Defendant was then advised of his Miranda rights and the conversation between the defendant and Galloway was recorded on tape and a transcription made. Following is the explanation by Mr. Galloway to defendant of his Miranda rights.

Galloway: "Johnny, before I ask you any questions, I want to tell you what your rights are. I want you to listen carefully.

You have the right to remain silent. That means you don't have to say anything. If you give up the right to remain silent you still have the right to stop answering questions at any time; do you understand that much?"

*Johnny*: "Yes."

*Galloway*: "You have the right to have a lawyer here while I'm questioning you; do you understand that? And if you can't afford to hire a lawyer, then we will get a lawyer appointed to represent you before I ask you anything; do you understand that?"

*Johnny*: "Yes."

*Galloway*: "If you decide to answer my questions without a lawyer here—"

*Johnny*: "Uh huh."

*Galloway*: "You have the right to stop answering questions at any time until you get a lawyer; do you understand that?"

*Johnny*: "Yes."

*Galloway*: "Having all these rights in mind, the right that you don't have to say anything, that if you do say anything it will be used against you in Court, and that you don't have to say anything until you get a lawyer, if you cannot afford to hire one we'll get one for you. Having all those rights in mind, do you wish to give me a statement about what happened tonight?"

*Johnny*: "Wiley Gray come down to the house."

*Galloway*: "Wait a minute. Do you understand all those rights?"

*Johnny*: "Yes."

*Galloway*: "You're fourteen years old, right?"

*Johnny*: "Yes."

*Galloway*: "How far have you been in school?"

*Johnny*: "Seventh grade so far."

*Galloway*: "What kind of grades do you make in school?"

*Johnny*: "Not too good."

*Galloway*: "Not too good, do you understand what I mean when I say you have a right to remain silent?"

*Johnny*: "Yes."

*Galloway*: "That means you don't have to say anything; do you understand that?"

*Johnny*: "Yes."

*Galloway*: "But you passed the seventh grade, you got out of the seventh grade?"

*Johnny*: "Yes."

*Galloway*: "Do you have a regular class at school?"

*Johnny*: "Not any special classes."

*Galloway*: "What kind of grades do you make in school?"

*Johnny*: "C's, D's, and two or three F's."

*Galloway*: "Do you understand what I mean when I say lawyer?"

*Johnny*: "Yes."

*Galloway*: "What is a lawyer?"

*Johnny*: "Upholds you in court."

*Galloway*: "To uphold you in court and take care of your side and protect your interests. So you know what a lawyer is for?"

*Johnny*: "Yes."

Following this colloquy, defendant informed Galloway that he wished to make a statement. He then told Galloway that following an argument between his father, Ed Manus, and Wiley Adams, he shot Adams while Adams was trying to enter the Manus apartment. Defendant also stated that he shot Adams one more time to keep him from coming back.

Defendant complains that it was error for his statement to be admitted at the original juvenile hearing and at his jury trial in Circuit Court.

■ A juvenile confession, as an adult, is not admissible unless it appears from the totality of the circumstances that the defendant made a knowing and intelligent waiver of his constitutional right to counsel and his right to remain silent. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Braziel v. State*, 529 S.W.2d 501 (Tenn.Cr.App.1975). Additionally, T.C.A. §§ 37–215, 37–226, and 37–227 describe conditions that must be met in juvenile cases in order that juvenile confessions will be admissible in evidence. T.C.A.

**140**

§ 37–226 provides that in delinquency hearings, the child is entitled to representation by legal counsel and if the child is unable to employ counsel the court will provide counsel for him. T.C.A. § 37–227 provides that "[a]n extra-judicial statement, if obtained in the course of violation of this chapter or which would be constitutionally inadmissible in a criminal proceeding, shall not be used against [the child]." This section further provides that no confession made by a child out of court can support an adjudication of delinquency unless it is corroborated in whole or in part by other evidence.

In the instant case the defendant was provided counsel at the delinquency hearing and at his jury trial. Defendant's extra-judicial statement was corroborated by other testimony. We find no violation of T.C.A. §§ 37–226 or 37–227.

With respect to the statutory requirements, T.C.A. § 37–215 provided at all times material to this case as follows:

37–215. *Custody—Release to proper party—Warrant for custody.*—(a) A person taking a child into custody shall within a reasonable time:

(1) Release the child to his parents, guardian or other custodian upon their promise to bring the child before the court when requested by the court unless his detention or shelter care is warranted or required under § 37–214, or

(2) Bring the child before the court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall give notice thereof, together with a reason for taking the child into custody, to a parent, guardian, or other custodian and to the court . . . .

(b) If a parent, guardian or other custodian, when requested, fails to bring the child before the court as provided in subsection (a) the court may issue its warrant directing that the child be taken into custody and brought before the court.

Prior to March 26, 1976, there was an added requirement in T.C.A. § 37–215

which provided that after an arrest of a juvenile he was to be "directly with all reasonable speed" released to his parents or taken before the juvenile judge where appropriate conditions of questioning by police could be prescribed. In *Colyer v. State,* 577 S.W.2d 460 (Tenn.1979), the Supreme Court held this requirement effectively prohibited detention and questioning of a juvenile immediately after taking him or her into custody. After the amendment in 1976, however, the words "within a reasonable time" were substituted for "directly with all reasonable speed." The amendment also deleted in its entirety the requirement that "any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed in this chapter and rules of court."

The legislature amended T.C.A. § 37–215 and, by that amendment, has provided that police may now temporarily detain and question arrested juveniles. Once the statutory requirements have been met, the question becomes whether under the totality of the circumstances, the juvenile confession is freely and voluntarily given following a knowing and intelligent waiver of his rights to counsel and his rights to remain silent.

■ A trial court's determination as to the admissibility of questionably obtained evidence is conclusive on the appellate courts unless the evidence preponderates against the trial court's determination. *State v. Yarbro,* 618 S.W.2d 521 (Tenn.Cr. App.1981); *Braziel v. State,* 529 S.W.2d at 501.

■ In the instant case the record shows that defendant was detained at the Cannon County Sheriff's Department when questioning of him was instituted. Defendant's father was present during the questioning and gave his permission for the questioning to ensue. In the presence of defendant's father, Mr. Galloway, in plain language, discussed with defendant each of the warnings mandated by *Miranda.* Defendant indicated that he understood those rights and wanted to make a statement. We find

nothing in the record that defendant made less than a knowing and intelligent waiver of his constitutional rights. As the Court of Criminal Appeals stated in *Braziel v. State*, 529 S.W.2d at 506:

> The voluntariness and admissibility of a juvenile's confession is not dependent upon the presence of his parents or attorneys at the interrogation when there has been a full *Miranda* warning given and understood. [Citations omitted.] A juvenile's confession or admission voluntarily given to police authorities after being fully warned and advised concerning his constitutional rights is admissible at his trial.

The evidence in this record does not preponderate against the Trial Court's determination that defendant's confession should be admitted. This issue is without merit.

■ Defendant next contends that the verdict of the jury is a nullity because it does not comply with the form mandated by T.C.A. § 37–201 et seq. The verdict returned by the jury found defendant to be a "delinquent child." It is defendant's insistence that the verdict is a nullity since it did not find him to be "guilty as a delinquent child." Defendant does not allege that he was prejudiced as a result of the form of the verdict. The verdict of the jury is proper so long as the language is clear and its meaning cannot be mistaken. *Baldwin v. State*, 213 Tenn. 49, 372 S.W.2d 188 (1963). It is clear in the instant case that the jury found defendant to be a delinquent child as that term is defined. T.C.A. § 37–202(4) defines a "delinquent child" as "a child who has committed a delinquent act and is in need of treatment or rehabilitation." A "delinquent act" is defined in Section 37–202(3) as

> an act designated a crime under the law, including local ordinances of this state, or of another state if the act occurred in that state, or under federal law, and the crime does not fall under paragraph (iii) of subsection 5 and the crime is not a traffic offense as defined in the traffic code of the state other than failing to stop when involved in an accident pursu-

ant to § 55–10–101, driving under the influence of an intoxicant or drug, or vehicular homicide.

We are of the opinion that the form of the verdict of the jury is proper and that this issue is without merit.

■ Defendant's next issue is that the Trial Judge improperly charged the jury on the various degrees of homicide. Here the juvenile petition set forth that the defendant was a delinquent child. As stated aforesaid, a delinquent act is the commission of acts which would constitute a crime in this state. T.C.A. § 37–202(3). To determine that the juvenile was a delinquent child, it was necessary that the jury find that the juvenile had committed an act which constituted a crime. It was, therefore, proper for the jury to be instructed on the law of homicide so it could determine if the juvenile was guilty of any crime and, therefore, a delinquent child. This issue is without merit.

■ Defendant, by his fourth issue, insists that the order entered by the Trial Judge was improper. It is his insistence that the Trial Judge's order recites that he was charged upon a juvenile petition with murder in the second degree when, in fact, the petition only charged him with being delinquent. He further contends that the Trial Court's order is erroneous in that it recites that the jury found the defendant to be a delinquent child within the meaning of the law. But defendant does not in anywise allege how he has been prejudiced by these recitals or how either of the recitals in the order ultimately affects the disposition of his case. We are unable to find how the defendant has in anywise been prejudiced by the order. The recitals in the order have in nowise affected the ultimate disposition of this case. This issue is likewise without merit.

The judgment of the Trial Court is affirmed with costs to defendant and the cause is remanded to the Trial Court for further necessary proceedings.

CANTRELL and CONNER, JJ., concur.