IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1999 SESSION

FILED

July 1, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9712-CR-00593 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. J. RANDALL WYATT, JR., |
| RICHARD ALLEN, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Second Degree Murder) |

FOR THE APPELLANT:

MARK J. FISHBURN
TOMMY OVERTON
213 Third Avenue N
Nashville, TN 37201-1603

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

TIMOTHY BEHAN
ELIZABETH T. RYAN
Assistant Attorneys General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

VICTOR S. JOHNSON III
District Attorney General

ROGER D. MOORE
PAUL DEWITT
Asst. District Attorneys General
Washington Square, Suite 500
222 Second Avenue South
Nashville, TN 37201-1649

OPINION FILED: _____

REVERSED AND DISMISSED

JOE G. RILEY,
JUDGE

## O P I N I O N

Defendant, Richard Allen, was indicted for the first degree murders of David Lee Day and James Kevin Huckaby. A Davidson County jury convicted the defendant of the lesser offense of second degree murder of David Lee Day and acquitted him of the Huckaby homicide. The trial court sentenced him as a Range I standard offender to twenty-five years incarceration. In this appeal as of right, defendant contends that his conviction must be reversed because of insufficient evidence to corroborate the testimony of an accomplice. The state prosecuted this accomplice for first degree murder, sought the death penalty, and allowed him to plead guilty to second degree murder during the accomplice's trial. The state has now changed its position and argues that he was not an accomplice. This is, however, impermissible. Since this felon-accomplice provided the only testimony linking the defendant to the crime, the long-standing, firmly established law in this state requires us to **REVERSE** the conviction.

## FACTS

The bodies of David Lee Day and James Kevin Huckaby were discovered in a wooded area in Smith County, Tennessee, on June 14, 1987. Day had been shot twice in the head; Huckaby had been shot once in the head. Two .32 caliber bullets were recovered from Day's body. A single .38/357 caliber bullet, dug from the ground with a shovel, was found under Huckaby's head. A lead fragment was also recovered from Huckaby's scalp.

Day's and Huckaby's widows testified that their husbands were friends, and that they suspected their husbands of dealing drugs. The last day they saw their husbands alive was June 8, 1987, a week before law enforcement discovered their bodies. Day's brother testified that Day and Huckaby came to his farm on June 8,

2

1987, and he loaned Day $4,000 to finance a "drug deal." When Day's car was found on June 10, 1987, it contained a box of marijuana.

John R. Goodwin, pursuant to a best interest plea agreement, pled guilty to the second degree murders of Day and Huckaby during his capital murder trial. Sentencing was deferred until after defendant's trial; however, the state agreed to: (1) recommend the minimum ten-year sentences to run concurrently; (2) recommend these sentences run concurrently with a Kentucky sentence; and (3) not oppose Goodwin's parole. The agreement was conditioned upon Goodwin's giving "truthful testimony" at defendant's trial.

Goodwin testified at defendant's trial. Goodwin, six feet and seven inches tall weighing 240 pounds, had prior convictions for first degree murder, armed robbery and grand larceny, in addition to his second degree murder conviction in this case. Goodwin also acknowledged that he used the false name of "Jack E. Adams" for two years while "on escape."

Goodwin testified that in 1987 he was a co-worker of the defendant. In June of that year, he went to defendant's home on Illinois Avenue in Nashville at about 2:30 p.m. According to Goodwin, the house was owned by defendant's grandmother, who also lived there. When he pulled across the driveway, he saw defendant's car, defendant's half-brother Darrell Taylor's car, and a third vehicle he did not recognize.

Goodwin entered the residence and walked into the kitchen where Taylor was sitting at a table with two men whom Goodwin did not recognize. Goodwin testified that, as he reached into a cabinet for a water glass to take his medication, he heard two or three shots. He turned around and saw one of the men laying on the table and the other man on the floor. He stated that defendant and Taylor were

standing two to three feet from the men, and that defendant had an automatic weapon and Taylor had a revolver.[1]

Goodwin testified that defendant told Goodwin to help move the bodies. Goodwin helped defendant undress the victims, and they moved the bodies to the bathtub. He said that Taylor took the victims' rings, watches and wallets, and put them in a box. He claimed that defendant told him that, "if [he] ever said anything that he would kill [him]." Goodwin then left and went to work.

At eleven o'clock that night, Goodwin ended his shift and went to his car. He testified that defendant was standing there and told Goodwin they needed to use his car because defendant's car was not big enough. Goodwin followed defendant to the Illinois Avenue house where the two men loaded the bodies into the trunk of Goodwin's car. They eventually drove onto a dirt road, stopped, and unloaded the bodies into a ditch.

Although the record is unclear as to the circumstances, Detective Mike Roland received information from Taylor in 1992 that the 1987 killings had occurred at the house on Illinois Avenue. The occupant who lived there at the time consented to a search. Roland and Officer Brad Corcoran found a bullet in the kitchen wall. When they peeled back the baseboard, they discovered dried blood. They found more blood beneath the floor and took scrapings for identification.

Michael DeGuglielmo testified as an expert in the field of forensic DNA analysis. He was provided with the blood scrapings taken from the house and blood drawn from Day's biological parents. He testified that the comparisons of these three samples indicated a child/parent relationship.

---

[1]Taylor was indicted jointly with defendant but their cases were severed. The record does not reveal how the charges against Taylor were resolved. He did not testify at defendant's trial.

4

Tommy M. Heflin of the Tennessee Bureau of Investigation testified as an expert in the field of firearms examination. He examined the two .32 caliber bullets recovered from Day's body; the .38/357 caliber bullet found under Huckaby's head in Smith County; another .38/357 bullet recovered from the Illinois Avenue house; and the lead fragment recovered from Huckaby's scalp. Heflin testified that each of the .32 caliber bullets had been fired from a semi-automatic pistol. He also testified that both of the .38/357 bullets had the same class of rifling characteristics, and were fired from a revolver.[2] He further testified that the lead fragment may have originally been a piece of the bullet recovered from Smith County.

Goodwin was apprehended in Florida in 1995. He denied any knowledge of the murders in his first statement to police. His story changed when the authorities told him they would "protect" him from defendant. Goodwin testified that the officers told him that if he made a statement and told the truth, he would not have to return to Tennessee to testify and would be released from jail that day. Goodwin then told them in a second statement that he heard the shots as he walked up to the door. In a third statement, he related that he was in the kitchen when the shots were fired. On cross-examination, he was questioned about an alleged fourth statement in which he said he was in the kichen with defendant and Taylor before the two victims arrived. After being shown this alleged statement, he denied making the statement. On further cross-examination, Goodwin admitted that the state had sought the death penalty against him for these two murders, and he pled guilty during his capital murder trial.

---

[2]Because Goodwin testified that he saw defendant holding an automatic weapon and Taylor holding a revolver, Heflin's findings may explain why the jury convicted defendant of Day's murder but not Huckaby's. Also, as noted by the trial court, the jury could have believed that Huckaby was actually murdered in Smith County. This, of course, would be inconsistent with the testimony of Goodwin.

## GOODWIN'S STATUS AS ACCOMPLICE

### A.  Accomplice Determination - Tennessee Cases

The trial court in this case instructed the jury that Goodwin was an accomplice as a matter of law, whose testimony required corroboration.  An accomplice is one who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging instrument."  State v. Griffis, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997).  Goodwin's status as such is significant because, in Tennessee, a defendant cannot be convicted of a felony on the uncorroborated testimony of an accomplice.  Id. at 587-88.  Defendant contends that the trial court's instruction was correct, but there is insufficient corroborative evidence to sustain the verdict.

The state argues that there was "a modicum of evidence sufficient to corroborate" Goodwin's testimony.  Alternatively, the state contends that Goodwin was not an accomplice as a matter of law; the trial court erred in so charging the jury; and this case must, therefore, be remanded for a new trial.  See State v. Green, 915 S.W.2d 827 (Tenn. Crim. App. 1995).  The basis for the state's argument is that Goodwin's trial testimony establishes he was an accessory after the fact, which does not make him an accomplice to the murder.  See Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 43 (1964); State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997).

We must initially determine, therefore, whether Goodwin was an accomplice as a matter of law.  Goodwin pled guilty to Day's murder, the same crime with which defendant was charged and now stands convicted.  Numerous Tennessee cases indicate that this is sufficient to brand Goodwin an accomplice as a matter of law. See, e.g., State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990) (finding that the alleged accomplice was an accomplice as a matter of law because he was convicted of the identical offense prior to the defendant's trial); Griffis, 964 S.W.2d at 589 (witness who pled guilty to attempted first degree murder was an accomplice

6

as a matter of law); and State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (finding witness an accomplice as a matter of law where he was jointly indicted for the offense, pled guilty to the crime, and admitted his involvement at the defendant's trial). However, in the instant case, the state now argues that because Goodwin's testimony at defendant's trial was inconsistent with his guilty plea, his status became a question of fact for the jury to decide.

The state relies upon State v. Allen, 976 S.W.2d 661, 666-67 (Tenn. Crim. App. 1997). In that case, two witnesses were alleged to have participated in a robbery with the defendants. One witness pled guilty in juvenile court, and the other was found guilty in juvenile court. The defendants were tried for the same robbery in criminal court. At defendants' trial the witnesses testified they were unaware the robbery was to occur. None of the briefs addressed whether or not the witnesses were accomplices. The trial court's charge to the jury was not included in the record, but this Court found that the "jury upon proper instruction could have found that [the witnesses] did not knowingly, voluntarily, and with common intent unite with the appellants in [the robbery]." *Id.* at 667. In so ruling, this Court concluded that the witnesses' accomplice status was a question of fact for the jury. *Id.* We note, however, that this Court did not discuss whether the prior juvenile adjudications required that the witnesses be considered accomplices as a matter of law. There was no application for permission to appeal to the Tennessee Supreme Court. We conclude that Allen is not controlling.

## B. Accomplice Determination - Other Jurisdictions

We note that our sister state of Alabama has held that "a witness for the State [who] has been convicted for the same crime as the one for which a defendant is being tried does not require the conclusion that he is an accomplice to the crime." Tinsley v. State, 395 So.2d 1069, 1078 (Ala. Crim. App. 1980), *cert. denied* 395 So.2d 1080 (Ala. 1981); *see also* Siler v. State, 705 So.2d 552, 555 (Ala. Crim. App. 1997), *cert. denied* (Ala. 1997) (" '[e]ven where a witness has been

7

jointly indicted with the defendant and convicted before the defendant's trial, if the witness denies his participation at the defendant's trial, the issue of whether he was an accomplice is a question of fact for the jury.' ") (citation omitted). Arizona has held likewise, noting that "[p]leas of guilty may be entered for a number of reasons[,] some unrelated to the issue of true guilt." State v. Anderson, 512 P.2d 613, 615 (Ariz. App. 1973), *aff'd as modified* 517 P.2d 508 (Ariz. 1973).

Montana, however, has taken a different approach. In State v. Johnson, 918 P.2d 293 (Mont. 1996), the state charged a co-defendant with criminal mischief and obstruction of justice. The defendant was also charged with criminal mischief and criminal endangerment arising from the same incident. The co-defendant entered into a deferred prosecution agreement that provided for dismissal of the charges after she testified against the defendant. The state conceded that the co-defendant's and another accomplice's testimony were all that connected defendant to the crime. However, it argued that co-defendant was not an accomplice because " 'she did not share a common intent with [defendant] to [commit the crime] nor did she unite in the planning, preparation or commission of the offense.' " *Id.* at 295.

The Supreme Court of Montana considered that the co-defendant "was not only chargeable with criminal mischief, but was also charged and arrested for the crime[,] . . . [and] the State did not dismiss those charges prior to trial." *Id.* at 296. Finding these facts "critical," it held that:

> the threat of continued prosecution of [co-defendant] for the same crime Johnson was charged with and tried for was an admission by the State that she was an accomplice to the crime. To procure her testimony by such a threat and then argue to the Johnson jury that there is no basis for finding that she was accountable for the crime was the kind of duplicitous conduct by an officer of the court that cannot be sanctioned by the law.

*Id. See also*, State v. Rose, 972 P.2d 321, 323 (Mont. 1998) (holding "the State's prosecution of one person for the same crime for which the defendant is tried constitutes an acknowledgment that the person is an accomplice to the crime.")

8

## C. Determination of Goodwin's Status

We recognize, of course, that Goodwin was not under the threat of continued prosecution in this case as was the co-defendant in the <u>Johnson</u> case. Goodwin entered his guilty plea during his first degree murder trial in which the state was seeking the death penalty. Goodwin's "Petition to Enter Best Interest Plea of Guilty," made a part of the record,[3] includes the following:

> [Goodwin's] sentencing hearing will be delayed until after the trials of Richard Allen and Darrell Taylor. . . . [Goodwin] agrees that if called to testify as a witness at the trial of Richard Allen and/or Darrell Taylor he will give truthful testimony which will be consistent with his statement at the time of his arrest in Ft. Lauderdale, Florida. [Goodwin] further agrees to give a statement under oath at the time of his plea setting forth to the best of his recollection the facts and circumstances surrounding the events of June 8, 1987. Upon [Goodwin's] agreement to do those acts as stated herein, the State agrees that at the defendant's sentencing hearing it will recommend a minimum sentence of ten years on each count of murder in the second degree to be served concurrently with each other and concurrent with any sentence remaining undischarged from his conviction in Simpson County, Kentucky in 1988. It is the further agreement that upon the defendant becoming eligible for parole consideration, the State will not oppose parole.

Thus, Goodwin was under the threat of a harsher sentence if he did not testify against defendant.

Montana utilizes a type of estoppel policy to prevent the state from "playing both ends against the middle." We are likewise concerned with the state taking inconsistent positions where it prosecutes and convicts a witness for murder and then portrays that same witness as something less than an accomplice in a subsequent prosecution of another individual <u>for the same crime</u>. This is particularly troublesome where, as here, the witness is convicted on the basis of a "best interest" plea.[4] While Tennessee recognizes the validity of such a plea, *see, e.g.,*

---

[3]Defendant attempted to introduce this petition as a part of the defense proof. The trial court disallowed its introduction into evidence but made the petition a part of the record.

[4]*See* <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). A best interest plea is made by a defendant who does not wish to acknowledge his or her guilt, but has determined that a guilty plea is preferable to standing trial and is in his or her "best interest." *See* <u>VanArsdall</u>

State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995), it is, nevertheless, a plea of guilty and carries the same consequences as any other guilty plea. *Id.* at 354. Yet, the state's position in this case would permit the use of best interest pleas to possibly avoid the necessity of putting on sufficient corroborative proof at the trial of a co-perpetrator. We are not persuaded that the state's inconsistent positions are warranted under existing Tennessee law.

When the state prosecuted Goodwin for Day's murder and accepted his guilty plea to second degree murder, it effectively declared that Goodwin had "knowingly, voluntarily and with common intent" participated in Day's murder. We hold that declaration to be binding on the state. To hold otherwise would permit the state to obtain a conviction against an accused solely on the basis of a convicted co-perpetrator's uncorroborated testimony, provided the state could convince the jury it wrongfully convicted the co-perpetrator. This makes no sense. While we do not fear that such an occurrence would happen frequently, we are concerned that it could happen at all.

We think the better rule is that once a witness pleads guilty to the same offense with which the defendant is charged (or which is incorporated in that offense), then the witness must be deemed an accomplice as a matter of law, irrespective of his or her testimony at the defendant's trial.

The trial court correctly declared Goodwin an accomplice as a matter of law, and properly instructed the jury that his testimony must be corroborated. We must now determine whether there was sufficient corroboration of Goodwin's testimony. The trial court noted that this was a "close call." Unfortunately, there was absolutely no corroboration linking the defendant to this horrible crime.

---

v. State, 919 S.W.2d 626, 629 (Tenn. Crim. App. 1995).

10

**SUFFICIENCY OF CORROBORATIVE EVIDENCE**

With respect to the nature, quality and sufficiency of the evidence necessary to corroborate an accomplice's testimony, our Supreme Court has stated:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

Sherrill v. State, 321 S.W.2d 811, 815 (Tenn. 1959). "In short, the evidence must confirm in some manner that (a) a crime has been committed and (b) the accused committed the crime." Griffis, 964 S.W.2d at 589.

In this case, there is more than enough evidence to corroborate Goodwin's testimony that Day was murdered at the Illinois Avenue house. However, there is absolutely no independent or corroborative evidence linking defendant to the crime. The only proof that defendant even lived at that address came from Goodwin.[5] No other evidence put defendant in the vicinity of the crime, linked him to the weapon, or linked him to Day. In short, the state is unable to point to any corroborative proof linking defendant to Day's murder.[6]

---

[5]In overruling defendant's motion for new trial, the trial judge stated, "[t]here was indication, clearly . . . that the Defendant lived at this location on Illinois Avenue. There was other evidence from witnesses at the trial that tend to connect the victim with this location" (emphasis added). It is unclear whether the trial court meant "victim" or "defendant." Our search of the record reveals no other evidence connecting the defendant with this location, although there certainly was other evidence connecting the victim with this location.

[6]The state asserts in its brief that Detective Roland "tied the defendant to the house on Illinois Avenue at the time of the crime," citing page 309 of the transcript of evidence. Detective Roland's testimony on that page does not do so, nor does his remaining testimony do so.

11

The rule in Tennessee requiring that an accomplice's testimony be sufficiently corroborated is a long-standing one. *See, e.g.*, Clapp v. State, 30 S.W. 214 (Tenn 1895). This "very salutary rule" is designed to prevent the "obvious dangers" of allowing a defendant to be convicted solely on the basis of an accomplice's testimony. Sherrill, 321 S.W.2d at 814. Indeed, Metro Police Lieutenant Russell Hackett admitted in this case that it is common for suspects to "put the blame off on other people." Accordingly, where there is not any evidence whatsoever to corroborate Goodwin's testimony that defendant killed Day, we are forced to make a finding of insufficient evidence to support the verdict. Such a finding requires us to reverse defendant's conviction and dismiss the charge. *See*, State v. Williford, 824 S.W.2d 553, 554 (Tenn. Crim. App. 1991) (holding "a reversal because of insufficient evidence corroborating an accomplice's testimony is not a trial error but relates to the sufficiency of the evidence and is a defect involving the guilt or innocence of a defendant.")

## CONCLUSION

Many aspects of this case remain a mystery. We do not know what evidence the state intended to introduce at Goodwin's first degree murder trial in which it sought the death penalty. We assume the state had evidence to indicate that Goodwin was more involved than his testimony revealed;[7] otherwise, Goodwin could not be convicted of any grade of homicide.

What we know is the state went to trial seeking a first degree murder conviction against Goodwin and acquiesced in a conviction for second degree murder. That conviction bars the state from subsequently contending that Goodwin was not really guilty of murder after all.

_____

[7]We have previously alluded to an alleged "fourth statement" in which Goodwin supposedly said he was in the kitchen with defendant and Taylor before the two victims arrived.

This Court concludes that the law in Tennessee requires corroboration of an accomplice's testimony. Further, Tennessee precedent requires a person who pleads guilty to the same offense for which a defendant is being tried be considered an accomplice as a matter of law. Any departure from these established precedents should not come from this intermediate appellate court.

Accordingly, the judgment below is reversed and the indictment against defendant is dismissed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**DAVID H. WELLES, JUDGE**

_____
**THOMAS T. WOODALL, JUDGE**