IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 2000 Session

## STATE OF TENNESSEE v. LAWRENCE DAVIS SHERRILL

**Appeal from the Circuit Court for Carroll County**
**No. 98CR-1256     C. Creed McGinley, Judge**

_____

**No. W1999-01488-CCA-R3-CD - Decided July 27, 2000**

_____

This appeal results from the defendant's conviction by a Carroll County jury for introducing contraband into a penal institution. He was sentenced to six years incarceration and fined $2,500. On appeal, the defendant asserts that the trial court erred in not granting his motion for a new trial based on the lack of evidence to corroborate the testimony of his accomplice required for a conviction. After careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Steven L. West, McKenzie, Tennessee (on appeal) and John E. Williams, Huntingdon, Tennessee (at trial) for the appellant, Lawrence Davis Sherrill.

Paul G. Summers, Attorney General and Reporter; Tara B. Hinkle, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 21, 1998, a Carroll County jury returned a guilty verdict against the defendant, Lawrence Sherrill, for introducing contraband into a penal institution where prisoners were housed. On October 29, 1998, the trial court sentenced the defendant to six years in prison and assessed a fine of $2,500. On November 25, 1998, the defendant filed a motion for new trial on the grounds that the evidence was insufficient to support a conviction and, on May 7, 1999, the defendant filed a supplement to motion to dismiss alleging that Tennessee law does not allow a conviction based solely on the testimony of an accomplice. After considering the evidence and arguments of counsel, the trial court denied the defendant's motion on May 10, 1999. The defendant appeals on a single issue: Whether the trial court erred in denying his motion for a new trial or directed verdict when the only incriminating evidence was the uncorroborated testimony of a co-defendant. After a careful review of the record, we affirm the judgment of the trial court.

# FACTS

On Thursday, March 12, 1998, co-defendant Casey Renae Scott[1] was living at her grandmother's house in Huntingdon, Tennessee, when she received several collect phone calls from the defendant. Scott had dated the defendant, who was housed at the jail, for about a year and a half prior to that time. She testified that the defendant told her to put some marijuana in a book and bring it to the jail. Since the defendant's visiting day was not until the next Sunday, he arranged to have the marijuana brought in by Tracey Pearson, a fellow inmate. The defendant told Scott to get the drugs from his brother, Kenny, and put it in the binding of the book. She was to glue the ends of the binding together. At trial, Scott identified the Bible in which she placed the marijuana. She stated that her name appeared on that Bible but testified that she scratched it out and put Pearson's name on it in two places. After preparing the Bible, Scott was told by the defendant to give it to Trenell Johnson to bring to Pearson at the jail. Johnson was to pick the book up from Scott at her residence. Johnson arrived at Scott's residence around 6:30 or 7:00 p.m., at which time Scott handed her a sack containing the Bible, two envelopes, and a black pair of sweat pants. Scott did not see the items again until she was arrested.

On cross-examination, Scott testified that she received a sentence of three years at thirty percent as part of her plea agreement. She admitted that she did not tell the police the whole story on March 12, 1998, when she gave a false statement that Pearson, rather than the defendant, told her that Johnson was coming over to get the Bible. At trial, she stated that she talked to Pearson on the phone, but it was the defendant who told her that Johnson was coming over. She also admitted that she lied when she told police that there was nothing in the Bible when she gave it to Johnson. On the Wednesday before the trial, Scott decided to tell the truth. She admitted that she had never implicated the defendant until that Wednesday, when the prosecutor came to the jail to see her. She stated that the State had not threatened her or made promises to her in exchange for her testimony. Scott had not talked to Johnson recently but did see her outside the courtroom.

On redirect, the witness testified that the defendant had written her letters telling her not to testify. She agreed that the letters said, "But whoever wants to testify against me, good luck" and "Your brother would spread this around that you're a snitch to everybody," which scared her.

On recross, Scott admitted that she forgot when asked on cross-examination that the prosecutor came to see her on the Thursday before trial and that she gave the prosecutor two letters the defendant had written her. Scott had received them the week before the trial and recognized the defendant's handwriting. Another letter had come the day of the trial, which she did not read. She testified that she was scared, because the letters sounded like the defendant did not want her to testify against him and wanted her to lie. The witness denied that the defendant threatened her in the letters, but then stated on further redirect that she was threatened. The letters were introduced into evidence.

---

[1] Scott testified that she had already pled guilty to introducing a drug or causing a drug to be introduced into the county jail.

Trenell Johnson was called by the State as a witness. She testified that she knew the defendant in school but had not dated him. Johnson was dating Tracey Pearson in March of 1998 when the alleged incident occurred. At that time, Pearson was housed in the county jail, and Johnson planned to visit him on his regular Thursday visiting day, March 12. While she was still at her cousin's house, the defendant called her and wanted her to pick up some things from Casey Scott to bring to the jail. He told her to give the items to Pearson. According to the witness, she went to Casey Scott's house and received some items in a bag. She denied knowing what was in the bag, which she took to the jail. There was a sign outside the jail waiting area that instructed visitors to have a name on every person's belongings, so she put the name [Tracey Pearson] on the bag. Marijuana was found in the Bible, and Johnson denied knowing that it was there.

On cross-examination, Johnson stated that she was not charged in the incident. She then stated that she did not talk to the defendant at her cousin's house and that he did not tell her to go get anything. She testified that it was Pearson who told her to get the items from Scott, and she did not know if the defendant was ever going to see those items. According to Johnson, Pearson had been with her the week before the trial but had since left. On redirect, Johnson admitted that she told the prosecutor that the defendant called her cousin's house but stated that she did not actually talk to him.

The State's next witness was Tammy Annette Hoffman, who was a jailer with the Carroll County Sheriff's Department on March 12, 1998. She stated that it is a routine procedure for the jailers to examine packages that are brought in for inmates. Hoffman received a package for Tracey Pearson that contained a pair of jogging pants and a Bible. When Hoffman opened the Bible, she noticed some green plant-like material in the binding of the book and notified the "chief upstairs." The chief cut open the binding of the Bible and, upon discovery of the marijuana, took custody of the book. On cross-examination, the witness examined the Bible and stated that the marijuana was still in the binder of the Bible.

Anthony Moon, Chief Deputy for the Carroll County Sheriff's Department, also testified for the State. Deputy Moon was at the jail on March 12, 1998. He was called by jailer Tammy Hoffman to come upstairs, because something was found in an incoming package. When he arrived upstairs, Hoffman showed Deputy Moon a Bible that had marijuana in the binding. He identified the Bible at trial. After taking custody of the book, Deputy Moon took it downstairs and locked it in the drug locker. The book was eventually sent to the lab. As a result of Deputy Moon's investigation, the defendant and Casey Scott were charged.

On cross-examination, Deputy Moon testified that he did not believe the statement that Casey Scott gave him that night. He stated that his office had made several unsuccessful attempts to serve a subpoena on Tracey Pearson but was able to serve his girlfriend, Trenell Johnson.

Betty Kathryn Sherriff, special agent forensic scientist and regional crime laboratory supervisor for the Tennessee Bureau of Investigation, described the procedure used to identify

suspected drugs in substances submitted to the lab.[2] In testing a suspected marijuana substance, Ms. Sherriff stated that she first weighs the substance and then performs a microscopic examination and a modified Deuquenois Levine test. If both tests are positive, she concludes that the substance is marijuana. Ms. Sherriff testified that she ran the routine tests on the substance found in the Bible. The substance weighed 1.8 grams, and her tests identified the plant material as marijuana.

On cross-examination, Ms. Sherriff stated that she was familiar with the term "joint" as one hand-rolled marijuana cigarette. According to Ms. Sherriff, an average marijuana cigarette weighs less than 1 gram, so 1.8 grams was enough marijuana to roll at least two cigarettes. She stated that she had no knowledge of the defendant's involvement with the marijuana apart from the fact that his name was on the request for examination form she received. Neither Trenell Johnson's nor Tracey Pearson's name appeared on the form. Ms. Sherriff testified that the microscopic examination she uses to identify marijuana would not be positive if marijuana residue was merely rubbed on a coat, but she was not sure if the modified Deuquenois Levine test would be positive. In that case, she explained that she would take a piece of the coat and inject a sample of it into a mass-spectrometer to identify tetrahydrozoline (THC) present in marijuana. She did not do that procedure in this case. Ms. Sherriff denied that a 50 gallon barrel of water would test positive for THC if two drops of the substance were dropped into it.

The State rested its case. The defense did not offer any proof, and the case went to the jury. The defendant was subsequently found guilty of introduction of drugs into a penal institution, and the jury set a fine of $2,500.

## ANALYSIS

### Standard of Review

The findings of fact by the trial court are conclusive on appeal unless the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). This court will not reweigh or reevaluate the factual evidence, and the trial court's assessment of the credibility of witnesses, along with the weight and value to be given to their testimony, will not be disturbed on appeal. Id. Questions involving the trial court's application of law to the facts of a case are reviewed *de novo* by this court, as are mixed questions of law and fact. Id.; Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998); Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App. 1997).

### Corroborating Evidence

The defendant argues that his motion for a new trial or acquittal should have been granted, because he cannot be convicted on the uncorroborated testimony of his alleged accomplice, Casey Renae Scott. He argues that her testimony was the only incriminating testimony presented at trial

---

[2]Sherriff was the first witness to testify at trial, but it makes more sense chronologically for us to place her testimony at the end of our recitation of the facts.

linking him to the drugs. Trenell Johnson's testimony, the defendant contends, was essentially that all arrangements to transport contraband to the jail were made between her and Tracey Pearson, which did not corroborate the accomplice's story. Upon careful review of the record, we affirm the defendant's conviction.

In Tennessee, it is well established that a defendant cannot be convicted of a felony on the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); Sherrill v. State, 321 S.W.2d 811, 815 (Tenn. 1959); State v. Allen, 10 S.W.3d 286, 289 (Tenn. Crim. App.), perm. app. denied (Tenn. 1999); State v. Anderson, 985 S.W.2d 9, 15 (Tenn. Crim. App. 1997), perm. app. denied (Tenn. 1998). Whether an accomplice's testimony has been sufficiently corroborated to allow a guilty verdict is a question for the jury. Bigbee, 885 S.W.2d at 803. However, our courts have given us guidance in determining whether sufficient corroborating evidence is present:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Id. (citations omitted).

We conclude that sufficient corroborating evidence was presented at trial to support the accomplice's testimony. The Bible owned by the accomplice, Casey Scott, was introduced at trial and appeared just as she testified that she prepared it according to the defendant's instructions by putting marijuana in the binding. Scott's name was apparently scratched out and replaced in two places with that of Tracey Pearson. This supports Scott's testimony that, since the defendant's visiting day was not until Sunday, he had to get the marijuana into the jail through another prisoner whose visiting day was that Thursday. In her testimony, Trenell Johnson, who was not an accomplice, stated that Pearson's visiting day was Thursdays.

Scott's testimony that the defendant arranged to have Trenell Johnson pick up the Bible for transfer to Tracey Pearson was also corroborated by Johnson's testimony. Johnson testified that she received a call from the defendant, whether directly or indirectly through Pearson, on that Thursday

telling her to go to Scott's house to pick up a package to bring to the jail. Johnson did so and was caught by the jailers when she attempted to give the Bible to Pearson. Testimony from the jailers, in conjunction with her own admissions, placed Johnson at the jail on Thursday, March 12, 1998, and verified that the marijuana was to be passed to Pearson in the binding of the Bible. This supports the accomplice's version of how she was instructed by the defendant to get the drugs to him on his non-visiting day. Although the cord between the defendant and the drugs was thin in places, it was sufficient to connect the defendant to the crime.

The defendant attempted to discredit the testimony of Trenell Johnson at trial, and the record shows that her testimony was contradictory at times. However, the issue of the credibility of a witness's testimony was presented to the jury at trial and is an issue exclusively entrusted to the jury as the trier of fact. Bigbee, 885 S.W.2d at 804. In addition, whether an accomplice's testimony has been sufficiently corroborated is also a matter entrusted to the jury. Id. The jury resolved these issues in favor of the State, and we see nothing in the record that compels us to disturb this finding.

## Motion for a New Trial or Acquittal

The defendant contends that the trial court erred in denying his motion to dismiss or for a new trial. The motion to dismiss will be treated as a motion for judgment of acquittal pursuant to Tennessee Rule of Criminal Procedure 29(c).

At the conclusion of the trial, the jury convicted the defendant for violating Tennessee Code Annotated § 39-16-201(a)(1):

> (a) It is unlawful for any person to:
>
>> (1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.

When a motion for acquittal is presented to the trial court, the court is only concerned with the legal sufficiency of the evidence, rather than the weight of the evidence presented. State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App.), perm. app. denied (Tenn. 1996). In determining sufficiency, the trial court must consider the parties' evidence, disregard the defendant's evidence that conflicts with that of the State, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences. Id. at 957-58. If the evidence is legally sufficient to support a conviction, then the motion for acquittal is denied. Our standard is the same on appeal. State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994).

Tennessee Rule of Criminal Procedure 33(f) allows the trial court to grant a new trial if the judge, acting as the "Thirteenth Juror," disagrees with the jury verdict. The trial court must weigh

the evidence and grant a new trial if the evidence presented preponderates against the verdict. Blanton, 926 S.W.2d at 958. When the trial court overrules a motion for a new trial, we can presume that the judge approved the jury's verdict. Id.

Upon approval of the verdict, the defendant's presumption of innocence is stripped away, and all conflicts in testimony of witnesses are resolved in favor of the State. Bigbee, 885 S.W.2d at 804. The question on appeal again becomes one of the legal sufficiency of the evidence to sustain the verdict, which prohibits us from reweighing the evidence. Blanton, 926 S.W.2d at 958. In reviewing the record, we must also keep in mind that the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences to be drawn from it. Bigbee, 885 S.W.2d at 803; Blanton, 926 S.W.2d at 958. If the evidence viewed in this light was sufficient for any rational juror to have found the essential elements of the convicting offense beyond a reasonable doubt, then we must affirm the trial court's verdict. Tenn. R. App. P. 13(e); Bigbee, 885 S.W.2d at 803.

Because the accomplice's testimony was sufficiently corroborated and can be credited, the evidence presented at trial was sufficient to support the jury's guilty verdict on every element of the above-cited offense. When the evidence, including the accomplice's testimony, is viewed in the light most favorable to the State, we conclude that it was sufficient for a rational jury to have found the defendant guilty of the crime charged beyond a reasonable doubt. The presence of marijuana in the Bible supplied by Scott and carried to the jail by Johnson is undisputed. The evidence supports the jury's decision that the defendant was the person who knowingly caused the drug to be brought into the jail. We see no reason to disturb the verdict in this case.

## CONCLUSION

We conclude that the evidence in the record before us was sufficient to corroborate the accomplice's testimony, and, therefore, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE