IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2005 Session

IN THE MATTER OF: J.A.F.

Appeal from the Circuit Court for Dickson County
No. CR-6956     Robert E. Burch, Judge

No. M2003-03047-COA-R3-CV - Filed August 31, 2005

This is an appeal from a Circuit Court determination, in a *de novo* appeal from juvenile court, that a juvenile was delinquent on the basis of a sale of marijuana to another juvenile. The defendant argues on appeal that the evidence presented was insufficient for a finding of guilt beyond a reasonable doubt. We agree, and we reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., and DONALD P. HARRIS, SR. J., joined.

Timothy V. Potter, Dickson, Tennessee, for the appellant, J.A.F.

Paul G. Summers, Attorney General and Reporter, Helena Walton Yarbrough, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.**

In September of 2003, J.R., a ninth grade student at Dickson County High School, was discovered by school officials to be in possession of a sandwich bag containing a small quantity of marijuana. He was asked where he got the marijuana, and he said he found it on the floor of a school bathroom. J.R. was charged in the Juvenile Court of Dickson County with committing a delinquent act. He pled guilty and was declared to be a delinquent child.

During the juvenile court hearing, J.R. was again asked where he got the marijuana. When he repeated his earlier account of finding it, the Juvenile Court judge told him he would be held in jail until he told the truth. The public defender advised J.R. that the judge would probably keep him locked up until he answered the question to the judge's satisfaction. J.R. ultimately gave the public

defender a name, which he wrote down on a slip of paper and handed to the judge. The name was that of another student, J.A.F., the defendant in this case.

J.A.F. was subsequently charged with delinquency. After a hearing on October 29, 2003, he was found guilty by the Juvenile Court. He then appealed to the Circuit Court for a *de novo* hearing, under Tenn. Code Ann. § 37-1-159. The Circuit Court conducted a hearing on November 21, 2003, at which J.R. and J.A.F. were the only witnesses to testify. J.R. testified that he had known J.A.F. for several years and considered him a friend. He said that J.A.F. had sold him the marijuana for $5 or $6. He also testified that he had lied earlier because he didn't want to get J.A.F. in trouble. For his part, J.A.F. denied having given or sold any marijuana to J.R.. No other evidence was presented.

At the conclusion of closing arguments, the trial court announced its ruling as follows:

> This is what we refer to in the trade as a swearing contest. We have one witness stating that the Defendant committed the crime; we have another witness stating that the Defendant did not commit this crime. The testimony of the two are diametrically opposed. It's simply a question of which one do you believe, and do you believe the one beyond a reasonable doubt.
>
> The Court is of the opinion that [J.R.] is the truthful witness in this situation. He has no reason to put this off on [J.A.F.]. There's – As I say, if he were forced to give a name to lie, you wouldn't give your friend's name, You'd give someone you didn't like. To do otherwise just does not make reasonable sense.
>
> At this point, [J.R.] has no reason to lie. He's already been convicted, punished, and he's got nothing to gain or lose. By the same token, [J.A.F.] has everything to gain or lose by a conviction in this case and would have a reason not to tell the truth.
>
> Therefore, beyond a reasonable doubt I find him guilty of the crime of simple possession and casual exchange. Judgment rendered accordingly, the punishment shall be the same as rendered in the juvenile court.

The formal judgment was entered the same day. It recited that "the child is sentenced to the same sentence that was imposed upon him by the juvenile court." Neither the judgment nor anything else in the record before us indicates what that sentence was.

J.A.F. appealed the finding of delinquency to the Tennessee Court of Criminal Appeals and moved the Circuit Court to stay its judgment pending the result of his appeal. The Circuit Court granted the motion. The appeal was subsequently transferred to the Tennessee Court of Appeals, which has statutory jurisdiction to hear appeals from delinquency proceedings, pursuant to Tenn. Code Ann. § 37-1-159(c). *See also* Tenn. R. App. P. 17.

## II. DUE PROCESS IN JUVENILE PROCEEDINGS

Our legislature established the juvenile courts of this state as courts of special and limited jurisdiction. *State v. Bomar*, 358 S.W.2d 295, 296 (Tenn. 1962). The statutes setting out the jurisdiction and organization of the juvenile courts include a recitation of the purposes for which they were established. These include the purpose to "[c]onsistent with the public interest, remove from children committing delinquent acts the taint of criminality." Tenn. Code Ann. § 37-1-101(a)(2).[1]

In those situations where a crime committed by a juvenile is deemed to be serious enough to justify criminal proceedings, the minor defendant may be transferred to criminal court and tried as an adult. Tenn. Code Ann. § 37-1-134. Proceedings involving lesser offenses are deemed to be civil in nature. They are initially tried in the juvenile court, with the option of appeal to the Circuit Court, and then to the Court of Appeals. *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979).

The juvenile courts have exclusive original jurisdiction of proceedings in which a child is alleged to be delinquent, unruly, or dependent and neglected. Tenn. Code Ann. § 37-1-103(a). A "delinquent act" is one that is designated as a crime under the law. Tenn. Code Ann. § 37-1-102(9). *State v. Manus*, 632 S.W.2d 137, 141 (Tenn. Ct. App. 1982). A "delinquent child" is "a child who had committed a delinquent act and is in need of treatment and rehabilitation." Tenn. Code Ann. § 37-1-102(10).

Despite the characterization of such proceedings as civil and their professed purpose of rehabilitation, the juvenile court retains the authority to impose a range of penalties upon a finding of delinquency, including fines, restitution, probation, community service, commitment to the Department of Children's Services, and placement in "an institution, camp or other facility for delinquent children operated under the direction of the court or other public authority." Tenn. Code Ann. § 37-1-131(a)(3).

Our juvenile courts thus have the power to order the involuntary confinement of children found to be delinquent. Although the above statute seems to indicate that they can be held only in facilities especially designed for juveniles, where they can be protected from adult offenders, there can be no doubt that being confined in such institutions involves many of the same restraints on liberty as are found in adult institutions.[2] Also, the operation of the delinquency laws can sometimes lead to longer periods of confinement for juveniles than could be imposed upon adult offenders for the same crimes. *In re Gault*, 387 U.S. 1, 29 (1967); *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779, 784 (Tenn. 1980).

---

[1] For example, Tenn. Code Ann. § 37-1-133 provides that a juvenile who is adjudged to be delinquent is exempt from any civil disability that would normally follow from conviction of a crime.

[2] There is no indication in the record that the court imposed any sort of confinement on J.A.F. However, the power of juvenile courts to order such confinement has been one of the main factors in the extension of due process rights to juveniles facing delinquency proceedings. *In re Gault*, 387 U.S. 1, 27 (1967).

Advancing standards of due process have impelled the United States Supreme Court, the courts of this state, and our legislature to extend to children who are the subject of delinquency proceedings many of the same protections that an adult criminal defendant would be entitled to rely upon in a criminal proceeding. Tenn. Code Ann. § 37-1-126 and 127; *In re Winship*, 397 U.S. 358 (1970); *In re Gault*, *supra*; *State ex rel. Anglin*, *supra*; *State v. Johnson*, 574 S.W.2d 739 (Tenn. 1978).

As Justice Harbison noted in *State v. Johnson*, "Although juvenile proceedings do, in many ways, partake of civil rather than criminal proceedings, the juvenile has a right to counsel, confrontation and cross-examination of witnesses, the privilege against self-incrimination and the right to have guilt established beyond a reasonable doubt." 574 S.W.2d at 741. Such rights apply with equal force in the Circuit Court hearing an appeal as in the Juvenile Court. *See Arwood v. State*, 463 S.W.2d 943 (Tenn. Ct. App. 1970).

The principle that a judgment of guilt in delinquency proceedings which might result in involuntary confinement be proven beyond a reasonable doubt was first articulated by the United States Supreme Court in *In Re Winship*, 397 U.S. 358 (1970), wherein it found that from a constitutional point of view, there was little to distinguish the incarceration of adult offenders from the involuntary confinement of juveniles. The primary question before us is, thus, whether the evidence in the proceedings at issue was sufficient to support the trial court's finding of guilt under that exacting standard. As we noted above, the only evidence presented was the conflicting testimony of the two juveniles, which the trial court resolved by finding that J.A.F. was not credible and that he was therefore guilty of the offense charged beyond a reasonable doubt.

## III. THE SUFFICIENCY OF THE EVIDENCE

A trial court's findings of credibility are entitled to great deference on appeal. *State v. Robinson*, 146 S.W.3d 469, 506 (Tenn. 2004); *State v. Honeycutt*, 54 S.W.3d 762, 766-767 (Tenn. 2001). As this court said in *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000), "[t]he trial court is uniquely positioned to observe the manner and demeanor of witnesses, and so appellate courts accord particular deference to trial court findings that depend upon weighing the value or credibility of competing oral testimony."[3]

Further, J.A.F. acknowledges that this court has specifically ruled that it is not permitted to re-weigh or re-evaluate the credibility of witnesses in determining the sufficiency of evidence to support a juvenile delinquency determination. *State v. Pfeifer*, 993 S.W.2d 46, 51 (Tenn. Ct. App. 1998).

However, the dispositive issue in this case is a legal one that goes beyond credibility alone. The question is whether the uncorroborated testimony of a single individual, no matter how credible,

---

[3]We note that in this case the trial judge said nothing about the demeanor of the witnesses, but apparently resolved the conflict in testimony by relying upon his analysis of their respective motives.

can be deemed sufficient to overcome the presumption of innocence and to sustain a finding of guilt beyond a reasonable doubt, the most stringent standard of proof known to our law. *Barnes v. U.S.*, 412 U.S. 837, 845-846 (1973).

In the realm of the criminal law, our courts have found that the answer to that question in any particular case may depend upon both the nature of the witness's testimony and his or her relationship to the defendant. In *Letner v. State*, 512 S.W.2d 643 (Tenn. Crim. App. 1974), a case involving an unprovoked murder, the Court of Criminal Appeals set out some of the parameters of that question.

> Although as a general rule a conviction may rest upon the testimony of a single witness, though it be contradicted by others or appear uncertain or inconsistent, the rule does not apply if the testimony of such single witness is not of a cogent and conclusive nature, and if "it is so indefinite, contradictory or unreliable that it would be unsafe to rest a conviction thereon." 23 C.J.S. Criminal Law § 903.

512 S.W.2d at 649

In cases where the witness is the victim of the crime, our courts have generally held such person's testimony to be sufficient, provided that it bears other hallmarks of reliability. For example, in *State v. Wyrick*, 62 S.W.3d 751, 767 (Tenn. Crim. App. 2001), a rape victim was the only witness to testify as to the circumstances of the rape and the identity of the rapist. The defendant apparently did not testify and was convicted of the crime. On appeal, he challenged the sufficiency of the evidence. The court affirmed the conviction, quoting the above language in *Letner*, and finding that the victim's testimony was sufficient. We note, however, that other witnesses testified to circumstances that tended to confirm the victim's account of events that occurred immediately before and after the rape.

*State v. Strickland,* 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) and *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981) were both cases involving armed robberies, where the defendants challenged their convictions on the ground that they had each been identified as the perpetrators by the testimony of only one witness, who was in both cases the victim of the robbery. The court rejected the challenges and affirmed the convictions. In both these cases, as in the *Wyrick* case, other evidence was produced at trial which tended to corroborate the victims' accounts.

In contrast to victim testimony, "[i]t is beyond dispute that in Tennessee a conviction may not be based upon the uncorroborated testimony of an accomplice." *State v. Bigbee*, 803 S.W.2d, 797, 803 (Tenn. 1994). *State v. Allen*, 10 S.W.3d 286 (Tenn. Crim. App. 1999), was a murder case wherein the defendant was convicted largely on the testimony of a man who testified that he had helped the defendant move the bodies of the victims and who himself had pled guilty to second-degree murder in earlier proceedings linked to the same crime. The trial court instructed the jury that the witness was an accomplice as a matter of law, whose testimony required corroboration. The jury found the defendant guilty.

The Court of Criminal Appeals discussed the question of accomplice testimony and defined an accomplice as one who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging instrument." 10 S.W.3d at 289. The court found that there was not sufficient corroborative evidence to link the defendant to the murder and reversed the guilty verdict. *See also Sherrill v. State,* 321 S.W.2d 811, 814-815 (Tenn. 1959); *State v. Griffis*, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997).

The same rule of corroboration applies in delinquency cases. In *State v. Pfeifer*, *supra*, a fourteen year old boy was charged with aggravated burglary and theft of property. A fifteen year old accomplice of the defendant had confessed to his involvement in the burglary, been found guilty by the juvenile court, and had testified against the defendant, leading to his conviction. The defendant appealed to this court, arguing that the evidence against him was insufficient for a finding of guilt beyond a reasonable doubt. We declared that,

> . . . there must be some fact, testified to entirely independent of the accomplice's testimony which taken by itself leads to an inference, not only that a crime has been committed, but that the accused is implicated in the crime. However, the evidence corroborating the testimony of an accomplice need not be sufficient to prove the whole case without the testimony of the accomplice.

993 S.W.2d 47 at 52. *See also Mathis v. State*, 590 S.W.2d 449, 452 (Tenn. 1979).

Since there was testimony by other witnesses in *Pfeifer* which corroborated the accomplice's testimony as to the whereabouts of the defendant at the time of the burglary and other testimony which indicated that the defendant was in possession of some of the stolen property a day or two afterwards, we found that the state had met its burden of proof, and we affirmed the trial court's finding of delinquency.

Applying the lessons of the above cases to the one before us, we must first observe that because of the nature of the crime in the present case, we certainly cannot call J.R. a victim. We also note that in *State v. Pigg*, M2000-03056-CCA-MR3-CD, 2001 WL 1502659, (Tenn. Crim. App., Nov. 27, 2001)(No Tenn. R. App P. 11 application filed) the appeals court found an adult buyer and an adult seller of drugs to be accomplices for the purposes of the rule of corroboration. We see no reason why the same definition should not apply in a transaction between a juvenile buyer and a juvenile seller of drugs.

We note also that the trial court relied for its conclusion quite heavily on the fact that J.R. had already been convicted, and therefore "had nothing to gain or lose." But in *Pfeifer*, where Mr. Pfeifer's accomplice had already been convicted and apparently also had nothing to gain or lose, the court found that the accomplice's testimony would have been insufficient by itself, and had to be corroborated by other evidence before the defendant could be found guilty beyond a reasonable doubt.

In sum, we believe that in a delinquency case where the court has the power to impose involuntary confinement on the minor defendant, a finding of guilt beyond a reasonable doubt may not be based solely on the testimony of an individual who was a participant in the same criminal act, without the corroboration of that testimony by some other evidence. We therefore reverse the judgment of the trial court.

## IV.

The judgment of the trial court is reversed. We remand this case to the Circuit Court of Dickson County for any further proceedings necessary. Tax the costs on appeal to the appellee, State of Tennessee.

 

 

_____
PATRICIA J. COTTRELL, JUDGE