# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY SESSION, 1996



**FILED**

**August 18, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | C.C.A. #02C01-9501-CC-00009 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | FAYETTE COUNTY |
| VS. | ) | |
| | ) | HON. JON KERRY BLACKWOOD, |
| **ANTHONY ALLEN &** | ) | JUDGE |
| **TYRONZA HENNING**, | ) | |
| | ) | |
| Appellants. | ) | Aggravated Robbery |

FOR THE APPELLANTS:

MR. RICHARD G. ROSSER
Attorney at Law
102 East Court Square
Somerville, TN 38068
Attorney for Anthony Allen

MR. DAVID H. CRICHTON
Attorney at Law
P.O. Box 651
Bolivar, TN 38008
Attorney for Tyronza Henning

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

EUGENE J. HONEA
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

CHRISTOPHER S. MARSHBURN
Assistant District Attorney
302 Market Street
Somerville, TN 38068

OPINION FILED _____

AFFIRMED, AS TO TYRONZA HENNING
VACATED AND REMANDED, AS TO ANTHONY ALLEN

LYNN W. BROWN, SPECIAL JUDGE

**OPINION**

The appellants, Anthony Allen and Tyronza Henning were both convicted upon trial by jury of aggravated robbery, a Class B felony. Each was sentenced to eight years in the department of correction and appeals as of right. The appellants allege the following: 1) the evidence consisting primarily of accomplice testimony was insufficient to sustain a conviction; 2) the trial court erred in allowing each of the accomplices to testify; 3) the trial court erred in refusing to declare a mistrial; and 4) the trial court erred in allowing one witness to identify Allen. Finding the evidence sufficient to sustain the conviction of Tyronza Henning and no reversible error in his case, we affirm his conviction. Although we find the evidence sufficient to convict Anthony Allen, we vacate his conviction and remand his case for further proceedings concerning his identification by one of the State's witnesses.

The proof in the case was undisputed that an armed robbery occurred. Amy Markle testified that she was working as manager at the Galloway Market in Fayette County on December 2, 1993. During the morning of that day Chris Burchette and Thomas Smith came into the market, made a purchase and left the market. Another person came into the market and ordered from the deli, followed by a man wearing a coat and a hood. The clerk and only other employee in the market, Christy Knight, brought the cut meat to the cash register, and the first man handed Ms. Markle twenty dollars for his purchase. Markle opened the register and the man wearing the coat and hood pointed a .38 caliber revolver at her face, demanding all the money. The man who had handed her the twenty-dollar bill pulled the bill out of her hand, proceeded to remove the money

from the cash register, and told Ms. Knight to go get down behind the meat counter and not to get up.

One of the men asked for the money bag. As Ms. Markle was walking where she thought the robber had directed, she fell into a chair. When she got up, her purse was gone, and she saw someone else standing at the door wearing a black ski mask. The robbers had departed. She told Ms. Knight to call the police, which was done. At trial Ms. Markle did not identify either of the people involved in the robbery. [1]

Christy Knight testified to the same events, adding that it was the man who was wearing the coat and hood who took Ms. Markle's purse. He was the robber who had the gun.

Chris Davis testified that he was working pest control at the market on the morning of the robbery. Upon leaving the Galloway Market he observed three men in a group outside the market. One was wearing a big coat with a hood. Mr. Davis identified this person as Anthony Allen, although he could not remember the color of the coat. Davis went on about his business, observing nothing of the robbery. He was not able to identify the other two men who were outside the market.

Don Pugh, an investigator for the sheriff's department, testified that he arrested Tyronza Henning, Earl Smith, Chris Burchette and Chris Johnson for the robbery. Smith[2]

_____

[1]Ms. Markle's and Ms. Knight's prior identification of one or both of the appellants in a photo lineup had been suppressed by the trial court upon a pre-trial motion hearing.

[2]Smith was a co-defendant at trial, but did not appeal his conviction or sentence.

took the investigators to a place where Ms. Markle's purse and other items from the robbery were found. Anthony Allen was brought in, apparently for questioning, and released.

Chris Burchette testified that he was at home on the morning of the robbery. His cousin, Anthony Allen, as well as Earl Smith and Chris Johnson, another cousin, came to his home in Earl Smith's car. These young men left together and picked up Tyronza Henning, who is yet another cousin of Mr. Burchette. Together they went to the Galloway Market. Burchette and Smith went into the store, purchased some food, and went back out to the car. Smith drove off with only Burchette as a passenger, leaving the other three men at the store. They went to the post office where Burchette checked a mailbox and then went riding around again. Burchette saw Anthony Allen and Chris Johnson running. Smith stopped his car and picked them up.[3] Anthony Allen was wearing a big black coat which Burchette thought had a hood.

Mr. Burchette testified further that Earl Smith drove the car containing these young men away from the Galloway Market. Burchette took a purse from Anthony Allen and threw it out the car window. Mr. Burchette testified that the purse belonged to Amy who worked in the market. The money was taken from the purse before it was thrown out. Burchette testified that he, Henning, and Allen got some of this money. He did not know if Smith or Johnson received any of the money.[4] Burchette testified that he knew there had been a robbery at the Galloway Market because the two left the market running and

[3]Although Burchette's testimony is not clear on this point, apparently Henning was also picked up at this time.

[4]We note that Burchett also testified at another point that everybody in the car got some of this money.

4

there was talk of what had happened.  He denied any knowledge of the robbery before it happened or any knowledge that a gun was involved.  Charged with the robbery, Burchette pleaded guilty in juvenile court.  Mr. Burchette testified that Allen did not go into the store, but gave no explanation of how he knew this.

Chris Johnson testified that these same five young men were together in Smith's car.  They parked at the post office, which is directly behind the Galloway Market.  Smith and Burchette went into the store to buy food after which they got back into the car.  Then Allen and Henning went into the store.  Johnson testified that he walked up to the store and saw it being robbed.  He thought that Allen had a gun in his hand, but was not sure.  Johnson testified that he "seen [sic] a woman hollering [sic]."  Henning was "standing up there" as Johnson looked into the store window.  Johnson got back into the car and told Smith that the market was being robbed.  Smith drove the car around the corner where he stopped and let Allen and Henning back into the vehicle.  Smith drove to Mason.  Along the way Johnson was offered some money from the robbery, but declined it.  He did not see a purse, but did see the money from the robbery.  Mr. Johnson was found guilty of the robbery upon trial in juvenile court.  He had previously pleaded guilty in juvenile court to an unrelated theft from the Galloway Market.

## I. SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged, the standard of review by an appellate court is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn.1985); Tenn. R. App. P. 13(e). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982). It is not the function of this court to reweigh evidence adduced at a criminal trial. A guilty verdict, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in testimony in favor of the theory of the State. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978). On appeal the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In this case if the jury believed the testimony of either Chris Burchette or Chris Johnson, the evidence is more than sufficient to support the conviction of each defendant. However, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 43 (1964). State v. Green, 915 S.W.2d 827 (Tenn. Crim. App. 1995). Where there is testimony of multiple accomplices, there must still be corroboration since accomplices cannot corroborate each other. Bethany v. State, 565 S.W.2d 900 (Tenn. Crim. App. 1978); Green supra at p. 831. The law regarding accomplice testimony is well settled:

> The rule simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must include some facts establishing the defendant's identity . . . This corroborative evidence may be direct or circumstantial, and it need not be adequate in and of itself to support a conviction; it is sufficient

6

>to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the crime charged.

Henley v. State, 489 S.W.2d 53, 56 (Tenn. Crim. App. 1972). See also Mathis v. State, 590 S.W.2d 449, 454 (Tenn. 1979); State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460, 463 (1963).

Although not addressed in the briefs of either appellant or the State we find that the determinative issue in this case is whether or not Burchette or Johnson were accomplices.

An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime. Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 216 (1895); Conner v. State, 531 S.W.2d 119 (Tenn. Cr. App. 1975). When the facts concerning a witness' participation are clear and undisputed, it is for the trial court to determine as a matter of law whether a witness is an accomplice. Ripley v. State, 189 Tenn. 681, 687, 227 S.W.2d 26, 29 (1950); State v. Perkinson, 867 S.W.2d 1 (Tenn. Crim. App. 1992); Conner 531 S.W.2d at 123. However, it becomes a question of fact for the jury when the witness' complicity is susceptible of different inferences. In other words, where the witness denies involvement with the crime, the question of whether he is an accomplice is one of fact to be submitted to the jury with proper instruction from the court on how to consider such testimony. Ripley, 189 Tenn. at 687, 227 S.W.2d at 28; State v. Anthony, 836 S.W.2d 600 (Tenn. Crim. App. 1992).

We note that cases hold that the test generally applied in determining whether a witness is an accomplice is whether the alleged accomplice could be indicted for the same offense charged against the defendant. See e.g. Monts v. State, 379 S.W.2d 34,

43, 214 Tenn. 171 (1964); State v. Green , 915 S.W.2d 827 (Tenn. Crim. App. 1995); State v. Perkinson, 867 S.W.2d 1 (Tenn. Crim. App. 1992); State v. Lawson, 794 S.W.2d 363 (Tenn. Crim. App. 1990). "[I]n Tennessee, an accessory after the fact is not subject to indictment for the offense committed by his principal; but rather he is guilty of a separate and distinct offense . . . Thus under the generally accepted test, an accessory after the fact could not be considered as an accomplice within the rule requiring that the testimony of an accomplice be corroborated." Monts v. State, 214 Tenn. 171, 192; 379 S.W.2d 34 (1964); Pennington v. State, 478 S.W.2d 891 (Tenn. Crim. App. 1971). See also Gann v. State, 2 Tenn. Crim. App. 230, 452 S.W.2d 685, 687 (1969), which holds that a person who steals property and one who, knowing it to have been stolen, receives it from the thief is guilty of separate offenses and without more, neither is an accomplice of the other.

In this case both Mr. Burchette and Mr. Johnson testified that they were not aware that a robbery of the Galloway Market was planned before the market was robbed. Burchette testified that he received some of the money which was taken during the robbery, which would make him an accessory after the fact, but not an accomplice to the robbery. Johnson testified that he refused to take any of the money from the robbery. A jury upon proper instruction could have found that either or both of these witnesses did not knowingly, voluntarily, and with common intent unite with the appellants in robbing the Galloway Market.[5] A finding that either of these witnesses was not an accomplice would result in the evidence being more than sufficient to convict both appellants. This issue is without merit.

---

[5]The Court's instructions on this issue are not contained in the record on appeal.

8

## II. TESTIMONY OF BURCHETTE AND JOHNSON

The appellants contend that the trial judge committed error by allowing the testimony of Mr. Burchette and Mr. Johnson over their objection when the names of neither witness were listed on the indictment.

Tenn. Code Ann. §40-17-106 directs the State to list "the names of such witnesses as [it] intends shall be summoned in the cause" on the charging indictment. The purpose of this statute is to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense to the indictment. However, this duty is merely directory, not mandatory. State v. Harris, 839 S.W.2d 54, 69 (Tenn. 1992). The State's failure to include the name of a witness on the indictment will not automatically disqualify the witness from testifying. Id. A defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage. Id.; State v. Baker, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987). The determination of whether to allow the witness to testify is left to the sound discretion of the trial judge. State v. Underwood, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984).

In this case both of the appellants were aware that Mr. Burchette and Mr. Johnson would potentially be witnesses at trial. Both of these witnesses had been charged as juveniles with being delinquent for their alleged involvement in the robbery of the Galloway Market. Burchette had pleaded guilty in juvenile court; Johnson had been found guilty in that court. Subpoenas for both of these witnesses were of record, having been issued several weeks before trial. The assistant district attorney informed the trial judge that well before trial he had told both defense counsel about the juvenile court proceedings regarding these witnesses, and also informed them that there were tape

9

recordings of such. The prosecutor further informed defense counsel that the juveniles would testify at trial. Counsel for appellant Allen had attempted to contact and interview both Mr. Burchette and Mr. Johnson before trial. Although counsel for both of the appellants in this case objected to the testimony of these witnesses at trial, neither counsel requested a continuance.[6] Both defense counsel agreed to the trial judge's order which permitted them to interview these witnesses during a break in the proceedings. However, as addressed in the next issue, efforts at such an interview were for naught. Under these circumstances we find that both defense counsel were aware of these witnesses; there was no surprise to either. Also, we can find no prejudice to either defendant, no undue advantage to the State or bad faith on the part of the prosecutor in this regard. Finding no abuse of discretion on the part of the trial judge, there is no reversible error in the failure of the district attorney to list these witnesses on the indictment.

### III. REFUSAL TO DECLARE A MISTRIAL

The appellants allege that the trial judge erred by refusing to grant a mistrial because the prosecutor interfered with their attempts to interview Mr. Burchette and Mr. Johnson. Appointed counsel for Anthony Allen had attempted to interview Mr. Johnson for a week before trial, but was frustrated in his attempt. Johnson was in state juvenile custody, and counsel was referred from one probation officer to another, who informed counsel that either Johnson's father was required to be present at an interview, or written permission for an interview obtained from his father. The same counsel had wanted to

---

[6]The failure to list these witnesses on the indictment was the subject of a lengthy bench conference which the trial judge conducted before the jury was sworn.

interview Mr. Burchette before trial, but had been unable to locate Burchette.  Before jury selection the trial judge stated that he would allow defense counsel an opportunity to talk to Mr. Johnson after the jury was selected.  After the jury was sworn, but before any witness had testified in the case, both counsel for the appellants attempted to interview these witnesses.

Before both counsel for the appellants attempted to interview the two witnesses, the assistant district attorney informed them that the witnesses did not want to talk to defense counsel.  The two defense lawyers did begin to interview Mr. Johnson, who answered a few questions, at which point the assistant district attorney again informed Johnson that if he did not wish to answer the questions, he did not have to.  As a witness in a jury out hearing, the assistant district attorney testified that he made this statement only after Mr. Johnson stated to both defense counsel that he did not want to say anything further.   This was disputed by the defense attorneys who also testified.  Whether prompted or not, Mr. Johnson did refuse to speak any further with defense counsel.  The trial court considered the testimony of the lawyers as an offer of proof, made no findings as to credibility of the witnesses, and denied the defendants' motion for a mistrial.

What concerns this court is that the assistant district attorney may have, by his advice to the witness, effectively communicated to Mr. Johnson that he did not want the interview to continue.  See State v. Carolyn Evaline Strickland, Court of Criminal Appeals No. 01-C-01-9212-CR-00390, Nashville, March 23, 1995.  The testimony of defense counsel certainly indicates such.   This court has stated that "a prosecutor, defense counsel or anyone acting for either should not suggest to a witness that he not submit to

11

an interview by opposing counsel." <u>Gammon v. State</u>, 506 S.W.2d 188, 190 (Tenn. Crim. App. 1973). The same principle would indicate that a prosecutor should not suggest to a witness that an interview by opposing counsel be terminated.

We are somewhat hampered in deciding this issue because the trial judge did not make a finding of whether the prosecutor interfered with the interview of these witnesses. Neither of the young witnesses was called upon to testify regarding the events of the aborted interview. Neither Burchette nor Johnson was questioned in court regarding his willingness to confer with defense counsel.

The law is well settled that the decision of whether or not to enter a mistrial rests within the sound discretion of the trial court. This court will not interfere with the trial court's decision absent a clear abuse of discretion on the record. <u>State v. McPherson</u>, 882 S.W.2d 365, 370 (Tenn. Crim. App.), perm. to appeal denied, <u>id</u>. (Tenn. 1994). See also <u>State v. Adkins</u>, 786 S.W.2d 642, 644 (Tenn. 1990).

The entry of a mistrial is appropriate when the trial of an accused cannot continue, or, if the trial does continue, a miscarriage of justice will occur. <u>McPherson</u>, 882 S.W.2d at p. 370. In other words, a mistrial will be declared in a criminal case only when there is a "manifest necessity" requiring such action by the trial judge. <u>State v. Millbrooks</u>, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). It is only when there is "no feasible alternative to halting the proceedings" that a manifest necessity can be shown. <u>State v. Knight</u>, 616 S.W.2d, 593, 596 (Tenn. Crim. App. 1981).

In this case we can find no proof that allowing the two witnesses to testify resulted in a miscarriage of justice. Defense counsel did not call either Mr. Burchette or Mr. Johnson to testify whether they were in any way intimidated by the prosecution or whether they would agree to an interview by defense counsel. From the proof in the record there is no indication that the witnesses were influenced in their testimony by the prosecution or that their testimony would have been different in any way if a mistrial had been granted and another trial commenced at a later date. Accordingly, we are of the opinion that there was no manifest necessity for the trial judge to grant a mistrial. Furthermore, there were alternatives to halting the trial which were not pursued by counsel for the defendants. The trial court was not requested to instruct the two witnesses regarding their participation in an out-of-court interview with the defense attorneys. We find no error in the trial judge's refusing to grant a mistrial.

## IV. WITNESS IDENTIFICATION OF ANTHONY ALLEN.

Anthony Allen states the final issue as follows: "Whether the court erred by allowing Chris Davis to testify regarding an out-of-court identification of the defendant, Anthony Allen, without holding a jury out hearing to test its admissibility, after the court suppressed out-of-court identifications and ordered jury out hearing to test the out-of-court identification of any witness."

As the issue is stated, there was no error. On direct examination Mr. Davis identified Anthony Allen as one of three people who were outside the Galloway Market on the morning of the robbery. Davis testified that Allen was wearing a big coat with a hood, but that he could not remember the color of the coat. The prosecutor asked no questions of Mr. Davis regarding any out-of-court identification, and neither did counsel

13

for Anthony Allen in his brief cross-examination.  However, counsel for Tyronza Henning asked Mr. Davis about his testimony at the preliminary hearing as follows:

Q.      Well, if I told you that my notes showed that you picked out this individual here [7] with the black jacket as the one wearing the long black coat and hood, would you say that my notes are wrong?

A.      Well, if that's what you have in your notes, I guess that's what I said.

Q.      Okay, and do you remember saying -- do you remember any differently, that you testified differently?

A.      I don't remember.

Q.      You don't remember who you said was wearing the coat with this hood on the day of the preliminary hearing, and that was just a couple of months back.  You don't remember who you identified then?

A.      Yeah, the same guy.

Q.      You're saying now that the guy -- my notes say ---

A.      The guy in the white shirt.

The court had indicated for the record that the individual in the white shirt was the accused, Anthony Allen.  Allen's attorney made no objection.

Thus, Mr. Davis testified only about a prior in-court identification which occurred at the preliminary hearing.  This was not an out-of-court identification.  From the testimony in the record it appears that the only identification of Mr. Allen by this witness prior to jury trial was in court during the preliminary hearing in which Allen was represented by counsel.  Defense counsel did inform the trial judge that Mr. Davis had been shown some photographs, but this was never developed in an offer of proof or any other testimony.

---

[7]The record is silent as to which person counsel was indicating.

14

Since there was no testimony by Mr. Davis about an out-of-court identification, this issue as stated is without merit.

Although less than clearly stated, what the appellant Anthony Allen alleges as error in his appellate brief is the in-court identification of him by Mr. Davis which was permitted by the trial court. One week before trial, defense counsel had filed a motion to suppress identification of Allen by Chris Davis, Amy Markle, Christy Knight and one Sandy Hughes, alleging an improperly suggestive out-of-court identification.[8] The trial court did conduct a suppression hearing at some time before trial, but the record of that hearing has not been preserved on appeal. The order of the trial court regarding the identification of Mr. Allen, approved by neither counsel, was not filed until over a month after the trial, although the document indicates that it was entered non [sic] pro tunc. That order suppresses testimony regarding all out-of-court identification of the defendants, but states findings regarding only Amy Markle and Sandy Hughes. When counsel for Anthony Allen objected to any identification of his client by Mr. Davis, the trial judge stated that Davis did not testify at the suppression hearing, and indicated that the court order of suppression was only regarding the witnesses who had testified at that hearing. However, the court order does state "that if any of the State's witnesses intend to identify the Defendant, Anthony Allen[,] that the State must give the court notice thereof so that an out-of-court hearing may be held to determine the admissibility of said evidence."

Once a pretrial motion is filed, there is a duty on the proponent to see that it is brought to the trial court's attention and pressed to conclusion. See State v. Kinner, 701 S.W.2d 224, 227 (Tenn.Crim.App. 1985). Rule 12(e), Tenn. Rules Crim. Proc., expressly

_____

[8]Ms. Hughes did not testify at trial.

places a duty on a trial judge to determine the merits of a motion before trial and state the court's essential findings. In this case the motion to suppress identification of Anthony Allen was presented to the trial court in a pretrial hearing. The trial court suppressed "any identification which is the result of being shown pictures or picture line ups of the Defendant," and required notice as stated above. The state did not comply with the trial court's order to give notice that Mr. Davis would identify Anthony Allen, and the trial court denied the appellant the hearing to which he was entitled on this issue. We are of the opinion that this error requires that the case be remanded for the trial court to conduct a hearing to determine whether the identification of Anthony Allen by Mr. Davis should be suppressed as a result of the alleged suggestive identification procedure.

### CONCLUSION.

Finding no reversible error in the trial or conviction of Tyronza Henning, his conviction is affirmed. The conviction of Anthony Allen is vacated and his case is remanded to the trial court for a hearing to determine whether the identification of Allen by Chris Davis should be suppressed as the appellant requested before trial. If the trial court finds that the identification by Mr. Davis should be suppressed, the court shall order a new trial for Mr. Allen on this charge. However, if the trial court finds that the identification should not be suppressed, the court shall make specific findings of fact and conclusions of law, and reinstate the judgment of conviction of Mr. Allen.

_____
Lynn W. Brown, Special Judge

16

CONCUR:

_____
David G. Hayes, Judge


_____
Jerry L. Smith, Judge