# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs January 7, 2003

## STATE OF TENNESSEE v. RICKY WOODS

### Direct Appeal from the Circuit Court for Madison County
No. 01-259    Roy B. Morgan, Jr., Judge

---

### No. W2002-00299-CCA-R3-CD - Filed March 3, 2003

---

A Madison County jury convicted the defendant, Ricky Woods, of aggravated burglary, theft of property valued over $500, and vandalism of property under $500. The trial court sentenced the defendant as a Range II multiple offender for the convictions for aggravated burglary and theft and imposed concurrent sentences of eight years for aggravated burglary, three years for theft, and eleven months and twenty-nine days for vandalism. On appeal, the defendant contends (1) the evidence was insufficient to support the convictions; and (2) the sentences are excessive. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, District Public Defender; and Stephen P. Spracher, Assistant District Public Defender (at trial and on appeal), for the appellant, Ricky Woods.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Upon returning from a trip during the weekend of January 12, 2001, Harold Spencer noticed the back door of his apartment was partially open, and a glass section of the door was broken. Spencer testified a television, a VCR, a cable box, a Play Station, and two games were missing from his apartment. He estimated the value of the television at $350 to $400, the value of the VCR at $100 to $120, the value of the Play Station at $300, the value of the games at $50 each, and the value of the cable box at $50.

Kevin Chism testified that on January 12, 2001, he owed the defendant money for drugs and wanted to borrow the money from Spencer, his relative. He stated that at approximately midnight, the defendant's step-daughter and one of her friends drove him and the defendant to Spencer's apartment on Old Hickory Boulevard in Madison County. Chism spoke to a neighbor who informed him that Spencer was not at home.

Chism testified that when he told the defendant no one was at home, the defendant became angry. He stated they both hit the glass on the back door until it broke, unlocked the door, and entered the apartment. While inside the apartment, the defendant identified which items to take, including a television, a VCR, a Play Station, and speakers. Chism stated that the defendant helped him carry the television to the car, and that Chism carried the VCR and the Play Station.

Chism testified they then returned to the defendant's house on Gates Street where they unloaded the items. He stated the defendant and Maxine Robinson gave him drugs, and they kept the items taken from the apartment. Chism further stated he (Chism) sold the Play Station to Robinson's nephew, while Robinson sold a descrambler, which they had also taken from the apartment.

Chism testified he was arrested the next day on an unrelated charge and told the police officer what had occurred on the previous night. He stated he agreed to testify as part of a plea agreement in which he pled guilty to aggravated burglary, theft, and vandalism.

Celia Robinson, the daughter of Maxine Robinson, testified that she and Devona Taylor drove Chism and the defendant, Maxine Robinson's boyfriend, to an apartment on Old Hickory Boulevard. She stated Chism told them that he wanted to go to his relative's apartment to get a television and a VCR. When they arrived at the apartment complex, Chism and the defendant exited the vehicle, and Celia Robinson and Taylor went to the store.

Celia Robinson testified that when they returned to the apartment complex approximately five minutes later, she saw Chism and the defendant exit the apartment with a television and a VCR. The defendant carried the television, while Chism carried the VCR; Chism helped the defendant put the television in the vehicle. She stated she and Taylor dropped Chism and the defendant off in an alley near her house on Gates Street and left.

Jeremy Price, Spencer's neighbor, testified that on January 12th, while inside his apartment, he and Jason Gentry heard two or three "loud bangs," which sounded "like somebody just kicked in a door." He stated he walked outside of his apartment and saw Chism, whom he had previously met through Spencer. Price stated Chism was loudly asking where Spencer was and cursing Spencer.

Price testified that while he was speaking to Chism, another man walked around the corner of the building past him and Gentry. Price described the man as a tall, stocky male wearing black clothing and holding what appeared to be a gun. Price stated he thought the man he saw was the defendant, but admitted he did not have a close view of the man.

Jason Gentry testified that while visiting Price, they heard noises, which "sounded like somebody was kicking in a door," and went outside to investigate. He stated he saw the defendant and another man standing near Price's apartment, and that the defendant walked directly in front of him. Gentry stated he did not speak to the defendant and did not see where he went. He also identified the defendant as one of the men he saw that night during a photographic line-up at the police department.

Officer Al Colon testified that he arrested Chism on an unrelated charge on January 13th, and that Chism informed him of the presence of stolen merchandise in a house on Gates Street. Officer Allen Randolph testified that he accompanied Sergeant Melinda Wyatt to a house on Gates Street to speak to the occupants regarding the possible presence of stolen property. He stated they were met at the door by Maxine Robinson, who allowed them to remove a television and a VCR from the residence. Sergeant Wyatt testified that she recovered a converter and descrambler from Bobby Walker, Maxine Robinson's brother, and a Play Station and games from Jonas Reed, who had purchased the items.

Maxine Robinson, the defendant's girlfriend, testified that on January 12th at approximately 8:00 p.m., Chism came to her house on Gates Street. Chism told her that his mother had kicked him out of her house and asked if she wanted to take a television and a VCR "in pawn" so he could use the money to get a hotel room. She stated she told him that she was interested in the items, but that she was about to go to sleep. She stated Chism did not have the items with him during this time.

Maxine Robinson testified Chism then went outside and spoke to the defendant; the defendant entered the residence and went to sleep. She stated Chism returned early the next morning and asked her if she was still interested in the items. She told Chism she was interested and gave him $60 for the items. She stated the defendant was still sleeping during this time; however, she did not know whether the defendant left during the night while she was asleep.

The defendant testified that on January 12th, Chism asked Celia Robinson and Devona Taylor to drive him to his relative's apartment on Old Hickory Boulevard. The two girls asked the defendant to go with them because they were afraid of driving to the apartments with Chism alone. The defendant stated that when they arrived, Chism told them to wait in the car and then walked to the side of the building.

The defendant testified he exited the vehicle to check on Chism, while the two girls went to the store. He stated that while he was walking around the apartment building, he heard noises coming from the back of the building. He noticed the door of an apartment was open and heard noises coming from inside the apartment, so he turned around and walked in the opposite direction. The defendant testified that while he was walking away, he saw two men, whom he did not recognize, and briefly spoke to them. He stated he did not see Chism speak to either of the men, and he denied possessing a gun.

The defendant testified Celia Robinson and Devona Taylor returned from the store as he was walking through the parking lot. Chism then returned to the vehicle carrying a television. The

defendant stated Chism placed the television in the vehicle, went back into the apartment, and returned with a VCR. They then returned to Maxine Robinson's house, where Chism unloaded the items. He testified he went inside the house and went to sleep. When he awoke the next morning, the television was on the kitchen table.

The jury convicted the defendant of aggravated burglary, theft of property valued over $500, and vandalism under $500. The trial court sentenced the defendant as a Range II multiple offender to eight years for aggravated burglary, three years for theft, and eleven months and twenty-nine days for vandalism. The trial court ordered the sentences to run concurrently, for an effective sentence of eight years.

## I. SUFFICIENCY

The defendant contends the evidence presented at trial was insufficient to support the convictions. We disagree.

## A. Standard of Review

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## B. Accomplice Testimony

The defendant contends the testimony of the accomplice, Kevin Chism, was insufficiently corroborated. We disagree.

In Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001); State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). In order to qualify as corroborative evidence,

[t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent

-4-

corroborative testimony must also include some fact establishing the defendant's identity.

State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994) (citations omitted).

The corroborative evidence may be direct or circumstantial and is not required to be sufficient standing alone to support a conviction. *Id*. The corroborative evidence is sufficient if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). In addition, corroboration is sufficient even though the evidence is slight and entitled to but little consideration when standing alone. State v. Heflin, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). The corroboration need not extend to all portions of the accomplice's evidence. Bigbee, 885 S.W.2d at 803. The sufficiency of the corroboration is a determination for the jury. Shaw, 37 S.W.3d at 903.

Chism, who pled guilty to various offenses involving the burglary of Spencer's residence, testified he and the defendant broke the glass on the back door, entered the apartment, and took various items from the apartment. Jason Gentry identified the defendant as one of the two men outside the apartment on the day of the offense. Celia Robinson testified she and a friend drove Chism and the defendant to the apartment complex; they both exited the vehicle; the defendant returned carrying a television; and Chism carried a VCR. We conclude Chism's testimony was sufficiently corroborated to support the convictions.

## C. The Convictions

"Aggravated burglary" is defined as the entering of a habitation with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-402(a)(1), -403(a) (1997). "Theft of property" is committed when one, "with the intent to deprive the owner of property, . . . knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103. As applicable to the case at bar, "vandalism" occurs when a person "knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." *Id.* § 39-14-408(a).

As viewed in the light most favorable to the state, the evidence presented at trial revealed that Chism and the defendant went to Spencer's apartment, and upon discovering Spencer was not at home, broke the glass out of the back door of the apartment, thus committing vandalism as alleged in the indictment. *See id.* § 39-14-408(a) (1997). The defendant and Chism then entered the apartment and took several items.

Spencer testified various items of personal property valued well over $500 were taken from the apartment. Chism testified he and the defendant took the items without Spencer's consent. We conclude the evidence was sufficient to support the defendant's convictions for aggravated burglary, theft of property valued over $500, and vandalism under $500.

## II. SENTENCING

The defendant contends his sentence is excessive. Specifically, he submits the trial court erred in refusing to apply mitigating factor (4), "[t]he defendant played a minor role in the commission of the offense." Tenn. Code Ann. § 40-35-113(4) (1997). We disagree.

### A. Standard of Review

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401 (1997), Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d) (1997). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

### B. Trial Court's Findings

At the sentencing hearing, the parties stipulated the defendant should be sentenced as a Range II multiple offender regarding the convictions for aggravated burglary and theft. The trial court correctly noted the range of sentencing was six to ten years for aggravated burglary, a Class C felony; two to four years for theft of property valued over $500, a Class E felony; and up to eleven months and twenty-nine days for vandalism under $500, a Class A misdemeanor. *See* Tenn. Code Ann. §§ 40-35-111(e)(1), -112(b)(3), (5) (1997).

The trial court began at the presumptive sentences of six years for the aggravated burglary conviction and two years for the theft conviction. It then applied the following enhancement factors for the aggravated burglary and theft convictions: enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;" and enhancement factor (13), the felony was committed while on probation from a prior felony conviction. *Id.* § 40-35-114(1), (13) (1997). The trial court also applied mitigating factor (1), "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." *Id.* § 40-35-113(1) (1997).

### C. Mitigating Factor (4)

The defendant does not contest the trial court's application of the enhancement factors. Rather, he contends the trial court erred in refusing to apply mitigating factor (4), "[t]he defendant played a minor role in the commission of the offense." *Id.* § 40-35-113(4) (1997). According to the evidence presented at trial, the defendant helped Chism break the glass in the back door of the apartment, entered the apartment, identified which items to take, and helped load the items in the vehicle. The defendant clearly played more than a minor role in the commission of the offenses. We conclude the trial court did not err in refusing to apply this mitigating factor.

We affirm the judgments of the trial court.

_____

JOE G. RILEY, JUDGE