# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 20, 2014 Session

## STATE OF TENNESSEE v. JAMES JOSEPH RYAN

**Appeal from the Criminal Court for Knox County**
**No. 100131      Steven Wayne Sword, Judge**

---

**No. E2013-02135-CCA-R3-CD - Filed July 22, 2014**

---

Following a jury trial in Knox County Criminal Court, Defendant, James Joseph Ryan, was convicted of burglary of a business (an automobile dealership) and theft of property of more than $10,000.00 in value.  He was sentenced as a Range II offender to an effective sentence of ten years.   In this appeal, Defendant asserts that accomplice testimony was not corroborated, that the trial court erred by not finding a certain witness was an accomplice as a matter of law, and that the trial court erred by ordering Defendant to pay the court costs. After a thorough review we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, SP.J., joined.

Keith Lowe, Knoxville, Tennessee, (on appeal), and John M. Boucher, Jr., Knoxville, Tennessee (at trial), for appellant, James Joseph Ryan.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

**Facts**

During the night of August 1-2, 2011, the Victory Nissan car dealership in Knox County was burglarized, and a Jeep Cherokee vehicle and an office safe containing cash, dealer plates, and a Rolex watch, among other items, were taken from the premises.  Entrance

was made by breaking into a locked door to the service area of the dealership. Drawers were left open and papers were strewn on the floor.

The burglary and theft were discovered by Denise Webb, the office manager, when she arrived for work on August 2, 2011. When she entered her office, she saw that items which had been in the closet were scattered on the floor and the safe and its contents were missing. Items which were inside the safe included a Rolex watch with "Victory Nissan" engraved on its back, dealer tags for vehicles, petty cash (usually in the amount of $500.00 to $600.00), coins, and paperwork. The Rolex watch was worth $8,000.00. She called the police. After officers arrived, Ms. Webb observed in the service department area a pried open door. Later it was determined that a Jeep Cherokee vehicle worth between $10,000.00 to $12,000.00 was also missing.

Ms. Webb testified that Defendant had worked as a salesman at the dealership until a few months prior to the burglary and theft. As a salesman, Defendant had been assigned a specific unique code number to gain access to the "key machine" which stored all of the keys to vehicles for sale on the lot. All salespersons and lock managers had their own different code numbers to the key machine. When an employee's employment ended, his or her key code was no longer able to open the key machine. However, Ms. Webb was aware that some employees provided their own key code numbers to other employees, even though it was against company policy. The key to the stolen Jeep Cherokee had been removed from the key machine on the night of the burglary, and there was no indication of forced entry into the key machine to remove the key. The lock manager checked the key machine when he came to work on August 2, 2011, to determine whose key code had been used to obtain the key to the stolen Jeep Cherokee. What the lock manager discovered was never mentioned during the trial.

On approximately the eighth of August 2011, Ms. Webb received a phone call about the stolen Rolex watch. She provided the information to Knoxville police officers. Cash that had been in the safe was never recovered. Other tangible items that had been inside the safe were returned "burned and destroyed." Ms. Webb testified that she believed the Jeep Cherokee had been recovered.

Knoxville Police Department Investigator Brandon Glover testified that in August 2011, he was assigned to investigate business place burglaries. He became involved in the Nissan dealership burglary within a week after the incident. Ms. Webb contacted him with information about the stolen Rolex watch, and Investigator Glover was then able to locate the Rolex watch. He first saw the watch inside the trunk of a vehicle parked at a local hotel. Investigator Glover learned that the watch was in the possession of Daniel Ledbettter. Mr. Ledbetter stated in an interview that he had received the watch from Defendant. This

information was provided about one week after the burglary. Mr. Ledbetter later identified Defendant in a photograph lineup prepared by Investigator Glover.

In 2012, Investigator Glover came into possession of a letter written by an inmate at the Knox County Detention Facility. As a result of reading this letter, Investigator Glover became aware of a female who was involved in the burglary. She was the girlfriend of the letter's author. The female was Taylor Costello, whom Investigator Glover interviewed. She admitted her involvement in the burglary and theft at the Nissan dealership. She also provided specific details that were consistent with physical evidence and with Ms. Webb's statements. Ms. Costello also identified Defendant in a photograph lineup. Investigator Glover testified that the stolen vehicle was a 2010 silver Jeep Commander SUV. Without objection, he testified that the value of the vehicle was more than $10,000.00

Daniel Ledbetter testified that he was arrested during the early part of August 2011 for the theft of the Rolex watch taken from Victory Nissan. Prior to his arrest, he had gone to two pawn shops that day and tried to pawn the watch. Mr. Ledbetter clarified that Defendant had actually sold the watch to him and not merely given it to him. Mr. Ledbetter had placed the watch inside the trunk of the vehicle where Investigator Glover later found the watch. Mr. Ledbetter admitted that he is a convicted felon with several theft convictions. He was charged with theft related to the Rolex watch, but not as to any other property taken in the Victory Nissan burglary. At the time of Defendant's trial, Mr. Ledbetter's charge for theft of the watch was pending "in a lower courtroom."

Taylor Costello testified that she participated with Defendant and a third person named Zachary Hawkins in the burglary and theft at the Victory Nissan dealership in Knoxville. The burglary occurred after midnight. Ms. Costello drove Mr. Hawkins' vehicle with Mr. Hawkins and Defendant as passengers. They targeted Victory Nissan because Defendant had previously worked there and knew how to easily gain entrance. Ms. Costello drove to an apartment complex near the dealership, and Defendant got out of the vehicle and walked toward Victory Nissan. He carried a crowbar. Mr. Hawkins stayed inside the vehicle, and Ms. Costello started driving up and down Clinton Highway on the lookout for police. After a while Defendant called Ms. Costello and told her he needed Mr. Hawkins' help in loading a safe at the dealership. Ms. Costello drove to a business located within a short walking distance of Victory Nissan. Mr. Hawkins got out of the vehicle, and Ms. Costello resumed driving up and down Clinton Highway.

Subsequently Defendant left the dealership in the stolen Jeep Cherokee which also contained the safe. The three perpetrators drove both vehicles to a secluded area in Knox County on the route to Union County. Eventually they stopped and Defendant and Mr. Hawkins took the Jeep Cherokee with the safe up into the woods away from the road where

Ms. Costello remained inside Mr. Hawkins' vehicle. Defendant and Mr. Hawkins hid the safe in the woods and returned to the road. According to Ms. Costello, the perpetrators abandoned the stolen Jeep Cherokee "off of Rifle Range" road after Defendant and Mr. Hawkins "wiped it down to make sure there [were] no fingerprints." They then went to a residence to sleep a few hours before going to a Home Depot store where Ms. Costello rented a concrete saw. They returned to the location of the safe and used the concrete saw to open the safe. It contained approximately $2,000.00 cash, a Rolex watch, a digital camera, a "bunch of tags," and paperwork. Ms. Costello testified that she kept almost all of the cash, and Defendant kept the Rolex watch. She did not know what happened to the digital camera. Gasoline was poured on the safe, and it was set on fire. Ms. Costello testified that Defendant obtained the key to the stolen Jeep Cherokee during the burglary because he "knew where the box was that has the keys."

**Analysis**

*Trial Court's Decision not to Declare Mr. Ledbetter as an Accomplice as a Matter of Law*

Mr. Ledbetter was charged with theft of the Victory Nissan engraved Rolex watch taken during the burglary of the dealership. Evidence submitted at trial was that Mr. Ledbetter purchased the Rolex watch from Defendant after the burglary and theft of the safe in which the watch was located at the time of the burglary. The proof showed that Mr. Ledbetter was not involved at all in the burglary of the dealership or the theft of the safe from Victory Nissan. While it is true that Defendant was convicted of theft of several items, including the theft of the Rolex watch, the type of theft for which he was convicted is defined as the *obtaining* of another person's property without the owner's effective consent. Mr. Ledbetter, however, was charged with theft under the alternative theory of *exercising control* over another person's property without the owner's effective consent. *See* Tenn. Code Ann. § 39-14-103. In 1989, our General Assembly provided that the term "theft" included what had previously been designated as the offenses of "embezzlement, false pretense, fraudulent conversion, larceny, receiving or concealing stolen property, and other similar offenses." Tenn. Code Ann. § 39-14-101. Thus, under prior statutory definitions, Defendant's criminal act regarding the Rolex watch would be larceny, and Mr. Ledbetter's criminal act would be receiving or concealing stolen property. Accordingly, Defendant and Mr. Ledbetter were not charged with commission of the same offense, even though the statutory term for both offenses was "theft."

Notwithstanding this scenario, Defendant argues that Mr. Ledbetter was an accomplice of Defendant as a matter of law regarding theft of the Rolex watch, and the trial

court thus committed reversible error by refusing to inform the jury of such status of Mr. Ledbetter.

As noted by the State in its brief, when the participation in the crime by a witness is clear and undisputed, the trial court must determine whether the witness is an accomplice as a matter of law. *Ripley v. State*, 227 S.W.2d 26, 29 (Tenn. 1950). However, if the facts of the witness's involvement are disputed or subject to alternative inferences, the jury decides as a matter of fact as to whether the witness is an accomplice of the defendant. *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997).

The trial court allowed the jury to determine whether Mr. Ledbetter was an accomplice to Defendant and declined to declare Mr. Ledbetter an accomplice as a matter of law. The trial court did declare Ms. Costello to be an accomplice as a matter of law and so informed the jury.

The record clearly shows that the trial court correctly refused to declare Mr. Ledbetter an accomplice to Defendant in the theft by obtaining the Rolex watch directly from the Nissan dealership. There is absolutely no evidence that Mr. Ledbetter "knowingly, voluntarily, and with common intent," *id*., united with Defendant in the taking of the Rolex watch from Victory Nissan. Defendant is not entitled to relief on this issue.

*Corroboration of Ms. Costello's Testimony*

Defendant argues that there was insufficient evidence to legally corroborate the accomplice testimony of Ms. Costello, and therefore the convictions should be reversed and dismissed. In *State v. Boxley*, 76 S.W.3d 381 (Tenn. Crim. App. 2001), this Court set forth the applicable well settled law regarding corroboration of an accomplice's testimony as follows.

> Our supreme court has set forth the quantum of proof necessary to establish sufficient corroboration as follows:
>
> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be

adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

[*State v.*] *Shaw*, 37 S.W.3d [900,] 903 [(Tenn. 2001) (citation omitted)]. In other words, the corroboration must include some fact establishing the *identity of the defendant* as a criminal actor. It is generally for the jury to determine whether sufficient corroboration exists. *Shaw*, 37 S.W.3d at 903.

*Boxley*, 76 S.W.3d at 386-87.

There is overwhelming corroborative evidence that the crimes of burglary and theft of items of more than $10,000.00 value were committed against the Victory Nissan in Knoxville. This includes Ms. Webb's testimony, the photographs of the interior of the dealership, the report of the appraised value of the Rolex watch, and Investigator Glover's testimony as to the value of the Jeep Cherokee. The law also requires that there be some corroborative proof that Defendant participated in the crime. As noted above, corroborative proof to identify Defendant as a participant in the crime is sufficient "if it fairly and legitimately tends to connect [Defendant] with the commission of the crime. *Boxley*, 76 S.W.3d at 386.

We conclude that Mr. Ledbetter was not an accomplice of Defendant. Mr. Ledbetter's testimony, then, need not be corroborated. In fact, Mr. Ledbetter's testimony is corroboration of Ms. Costello's testimony that Defendant participated in the burglary of and theft of the safe from Victory Nissan. Ms. Webb's testimony placed the Rolex watch inside the secured safe at the time it was stolen during the burglary. Mr. Ledbetter placed the same Rolex watch in the possession of Defendant, who sold it to Mr. Ledbetter within one week of the burglary. Ms. Webb's testimony further connected Defendant to commission of the burglary and theft with her testimony that Defendant was an ex-salesman at Victory Nissan. The key to the stolen Jeep Cherokee was locked in a key machine. Although Defendant's unique code number to enter the key machine would have been deleted after he was no longer an employee, there was testimony that some employees shared their own unique code numbers to the key machine with other employees, even against company policy.

During cross-examination by Defendant's counsel, Mr. Ledbetter testified that he had "several' theft convictions dating back to 1987. He also testified that he knew Defendant prior to purchasing the Rolex watch from Defendant. The amount of money Mr. Ledbetter gave to Defendant for the watch is not in the testimony. However, Mr. Ledbetter testified that he hoped to get $1,000.00 from a pawn shop for the Rolex watch which other evidence

showed had an appraised value of $8,000.00. The jury could reasonably infer that Mr. Ledbetter would not be trying to pawn the watch for less money than he had given for it, and that Defendant knew Mr. Ledbetter was a purchaser of stolen property. Thus, Mr. Ledbetter's testimony directly connects Defendant to the possession and sale of the stolen Rolex watch, which connects Defendant to the stolen safe containing cash and dealer tags (corroborated by Ms. Webb) which in turn connects Defendant to the burglary of the Victory Nissan dealership. As noted above, it is not necessary that the corroborative proof extend to *all* of the accomplice's testimony. *Id.* There was sufficient corroboration of the accomplice testimony. Defendant is not entitled to relief on this issue.

*Court Costs*

Defendant asserts that the trial court erred by ordering him to pay the court costs. Defendant notes that the trial court determined that Defendant was indigent at his arraignment and that he was again found to be indigent when his motion for new trial was denied. Under these circumstances, Defendant relies upon provisions contained in Tennessee Code Annotated sections 40-25-129 and 40-25-130 to assert that the State should have been ordered to pay the court costs. Specifically, Defendant argues that the following language in these statutes requires the State to pay the court costs in his case:

**40-25-129. Cases in which state or county liable.**

Neither the state nor any county of the state shall pay or be liable in any criminal prosecution for any costs or fees hereafter accruing, except in the following classes of cases:

(1)     All felony cases, where prosecution has proceeded to a verdict in the circuit or criminal court;

(2)     All cases where the Defendant has been convicted in court of record and the court has made a finding at any evidentiary hearing that the defendant is indigent and remains indigent at the time of conviction or where the execution issued upon the judgment against the defendant has been returned nulla bona.

* * *

-7-

**40-25-130. Circumstances when state or county liable.**

The state, or the county in which the offense was committed or is triable, according to the nature of the offense, pays the costs accrued on behalf of the state, and for which the state or county is liable under § 40-25-129, in the following cases, when:

* * *

(5)     The defendant has been convicted, but the execution issued upon the judgment has been returned "nulla bona" or where the court hearing the case has made a finding at any evidentiary hearing that the defendant is indigent and remains indigent at the time of conviction.

In *State v. Black*, 897 S.W.2d 680 (Tenn. 1995), our supreme court addressed issues regarding waiver of court costs by a General Sessions Court Judge in the case of an indigent defendant convicted of DUI. First, the supreme court held that a General Sessions Court does have the authority to waive payment of court costs by an indigent defendant in a DUI case. Next, our supreme court addressed the issue of whether it is *mandatory* that the General Sessions Court waive court costs each time an indigent defendant is convicted of DUI or it is *discretionary* with that court to waive the court costs. Our supreme court held that the decision to waive the court costs is discretionary. In doing so the court stated,

With regard to the [ ] question, the Court of Criminal Appeals stated that:

We find that even if the statutes cited by the parties impliedly grant the power to either the General Sessions or trial judge, there is no affirmative duty upon said judge to waive the costs, even if the defendant is found indigent. A defendant may be indigent at the time of conviction yet the trial court might find that he or she may have the means of paying the costs in the future.

This holding is correct. Initially, there is no statutory or decisional authority to support the proposition that a trial court must waive the court costs upon a finding of indigency. Moreover, when the legislature amended Tenn. Code Ann. § 40-3331 (the forerunner of § 40-25-129) to insert the language now codified at § 40-25-129(2), it specifically provided that:

It is the legislative intent of the General Assembly that such finding of indigency, or the issuance and return nulla bona of such execution, or the issuance of such distress warrant, *shall not bar the subsequent recovery from, or on account of, the defendant of any costs, fees, taxes, or other charges authorized, imposed or prescribed by law in connection with such case . . .*

Tenn. Pub. Acts 1980, ch. 625 (emphasis added).

**Because a rule requiring the trial court to waive court costs upon a finding of a defendant's indigency would categorically prohibit the State from subsequently recovering those costs, we agree with the Court of Criminal Appeals that the decision of whether to waive court costs rests within the discretion of the court.**

*Black*, 897 S.W.2d at 683. (emphasis in bold print added)

We conclude that *Black* controls in the issue presented by Defendant. Defendant does not show how the trial court abused its discretion by ordering Defendant to pay court costs. He simply asserts that he was found to be indigent, and therefore "it would be proper for the costs of this matter to be taxed to the State." Defendant is not entitled to relief on this issue.

Having considered all of Defendant's issues and concluded that he is not entitled to relief, we affirm the judgments of the trial court.

_____

THOMAS T. WOODALL, JUDGE