IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2003

**STATE OF TENNESSEE v. MATTHEW A. WEBB**

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR 79-2002      William B. Acree, Jr., Judge**

---

**No. W2002-03048-CCA-R3-CD  - Filed January 2, 2004**

---

After a jury trial, the defendant was found guilty of aggravated assault and sentenced as a Range I, standard offender to five years in the Tennessee Department of Correction. He contends on appeal that 1) the evidence was insufficient to sustain the conviction, 2) the trial court erred in admitting a photograph of the victim, and 3) the trial court erred in denying any form of alternative sentencing. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Joseph P. Atnip, District Public Defender (on appeal); Didi Christie (on appeal), Brownsville, Tennessee; and Charles S. Kelly and Charles S. Kelly, Jr. (at trial), Dyersburg, Tennessee, for the appellant, Matthew A. Webb.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; and Thomas A. Thomas, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Matthew A. Webb, was convicted of aggravated assault in violation of Tennessee Code Annotated section 39-13-102(a)(1)(A), a Class C felony. Following a sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender to five years in the Tennessee Department of Correction (TDOC). This appeal timely followed. The defendant contends on appeal that 1) the evidence was insufficient to sustain the conviction, 2) the trial court erred in admitting a photograph of the victim, and 3) the trial court erred in denying any form of alternative sentencing. The judgment of the trial court is affirmed.

**Facts**

During the late evening hours of January 27, 2002, a group of ten to fifteen young men had gathered in the dormitory room of Lucas Ingram on the campus of the University of Tennessee at Martin (UTM) to watch a boxing match on television. Although not a student at UTM, the defendant had driven to Martin from Union City to visit Ingram in his dorm room. The defendant was accompanied by Robert Taylor and Estes Mitchell. Most of the people present in the room were football players at UTM. After watching the boxing match on television, the defendant challenged Frankie Doss, a student and two-hundred-seventy-pound football player, to a boxing match. The men put on boxing gloves and began boxing in the hallway of the dorm. After the noise level escalated, the group moved outside, and the fight continued. Doss knocked the defendant down on two different occasions. The defendant became upset after the second knock down and stated that he was going to his car to get a gun. Doss and a few of the other men, including the victim, Andrew Garrett, ran after the defendant to prevent him from reaching the parking lot. The defendant was pushed to the ground, and he and Doss wrestled in the grass until the others broke up the fight. Everyone then shook hands and apologized for what had happened. The victim apologized to the defendant for pushing him down. The defendant, along with his friends Taylor and Mitchell, left Martin and returned to Union City.

Jerome McElrath and Jeffrey Shields, co-defendants, testified that the defendant returned to Union City and told them what had transpired in Martin. The men said that the defendant asked them to return to Martin with him. The defendant said that he had lost his wallet during the fight and wanted to go back and look for it. According to Shields, the defendant said that if they saw anybody, they were going to fight. The defendant drove Shields, Taylor, and McElrath back to the UTM campus. As the defendant's group claimed to be outside the dorm looking for the missing wallet, the victim and another student, Shane Williams, arrived back at the dorm from a trip to a local convenience store.

The victim testified that he and Williams returned to the dorm around 12:30 a.m. As they walked toward the building, a group of three men, including the defendant, approached them. One of the men was in front of the victim to the right and the other was in front to the victim's left. One of the men, later identified as Shields, hit him in the face and dazed him. After being hit again, the victim was knocked unconscious. The victim assumed that the defendant hit him the second time, but did not know for sure, because the defendant was standing on the side where the victim was hit. The victim was taken by ambulance to the emergency room in Martin. He was later transported to Vanderbilt Medical Center in Nashville. The victim testified that he sustained numerous injuries, including a broken jaw in two different places, a broken nose, a black eye, a gash on the back of his head, a cut on his ear, and lacerations and tears to the inside of his mouth. Upon arriving at Vanderbilt, the victim underwent over four hours of reconstructive surgery to his jaw. Four metal plates and wire mesh were permanently implanted into the victim's jaw. His mouth was completely wired shut for approximately two months, during which time he had to ingest food through a straw. He said that he was in excruciating pain, had constant headaches, and had trouble breathing. The victim stated that he was in constant pain for about seven weeks and lost thirty pounds.

Teresa Garrett, the victim's mother, first saw her son around 7:00 a.m. in the emergency room at Vanderbilt. She said that she probably would not have even recognized him, because his face was so distorted. The victim was sitting up and continually spitting blood and tissue into a cup. His jaw was distorted and he had a badly bruised eye. She or the victim's father took a picture of the badly beaten victim before he underwent the surgery. The State introduced the picture, over the defendant's objection, in order to assist in establishing that the victim suffered serious bodily injury.

Shane Williams stated that as he and the victim approached the dorm, the defendant pointed at the victim and said "that's the kid that was talking shit." He initially saw only three of the men. A fourth person later came from around the building. One of the men, other than the defendant, told Williams to stay out of it and kept him back while he attempted to assist the victim. As Williams was running around, he heard a bottle break. He looked around and saw the victim lying on the ground with at least two of the men kicking and stomping on the victim's face and sides of his body. The men were kicking the victim's head into the concrete curb. He testified that he saw the defendant kick the victim. The victim was not fighting back and appeared to be unconscious. Williams ran around the corner of the building and hid until the incident was over.

Robert Taylor testified that as the group began looking for the defendant's wallet near the dorm, Taylor walked around the side of the building to use the bathroom. He said that he came back around the building and saw the defendant standing over the victim while the victim was lying near the concrete curb. He saw the defendant hit the victim once in the victim's shoulder area while he was lying on the ground. The victim was not moving. Taylor told them "that's enough," and the group got in their car and left. He said that he only saw the end of the fight and did not see anyone else hit the victim.

The defendant testified that his only intention in returning to Martin was to locate his wallet. He said that he approached the victim to ask him about his wallet, and the victim pushed him. The defendant stated that Shields hit the victim, and then the victim fell and hit his head on the curb. The defendant testified that he only struck the victim once in the ribs while he was on the ground. Both McElrath and Shields stated that the defendant asked them to return to Martin with him to look for his wallet. Having already been convicted, both of the witnesses admitted to hitting the victim. According to them, the defendant also hit the victim numerous times during the altercation. McElrath said that after they realized that the victim had stopped moving, they returned to their car and left.

## Analysis

The defendant contends on appeal that 1) the evidence was insufficient to sustain the conviction, 2) the trial court erred in admitting a photograph of the victim, and 3) the trial court erred in denying any form of alternative sentencing.

I. Sufficiency of Evidence

The defendant contends on appeal that the evidence was insufficient to establish that the defendant was the person who inflicted the injuries upon the victim. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

In Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001); State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). Furthermore, accomplices cannot corroborate each other. State v. Boxley, 76 S.W.3d 381, 386 (Tenn. Crim. App. 2001). In order to qualify as corroborative evidence,
> [t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity.

State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994) (citations omitted).

The corroborative evidence may be direct or circumstantial and is not required to be sufficient standing alone to support a conviction. Id. The corroborative evidence is sufficient if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). In addition, corroboration is sufficient even though the evidence is slight and entitled, when standing alone, to but little consideration. State v. Heflin, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). The corroboration need not extend to all

portions of the accomplice's evidence. <u>Bigbee</u>, 885 S.W.2d at 803. The sufficiency of the corroboration is a determination for the jury. <u>Shaw</u>, 37 S.W.3d at 903.

The defendant does not argue that the State failed to establish the elements of aggravated assault. <u>See</u> Tenn. Code Ann. § 39-13-102(a)(1)(A). He contends that the evidence did not sufficiently establish that the defendant was the person that inflicted the injuries sustained by the victim. The defendant avers that the only evidence establishing that he struck the victim was the uncorroborated testimony of his accomplices. Shane Williams, the student accompanying the victim, unequivocally testified that he saw the defendant kick the victim. This testimony alone is sufficient to corroborate the accomplice testimony. Additionally, the defendant admitted to striking the victim on at least one occasion. A rational trier of fact could have properly found that the evidence sufficiently established that the defendant committed aggravated assault. This issue is without merit.

## II. Admission of Photographs

Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases. <u>See</u> <u>State v. Banks</u>, 564 S.W.2d 947, 949 (Tenn. 1978) (citations omitted). Accordingly, "the admissibility of photographs lies within the discretion of the trial court" whose ruling "will not be overturned on appeal except upon a clear showing of an abuse of discretion." <u>Id.</u> Notwithstanding, a photograph must be found relevant to an issue at trial, with its probative value outweighing any prejudicial effect, before it may be admitted into evidence. <u>See</u> <u>State v. Vann</u>, 976 S.W.2d 93, 102 (Tenn. 1998). Notwithstanding this broad interpretation of admissibility, evidence that is not relevant to prove some part of the prosecution's case should not be admitted solely to inflame the jury and prejudice the defendant. <u>Banks</u>, 564 S.W.2d at 951.

The defendant argues that the photograph introduced through the victim's mother showing his injuries before he underwent surgery was more prejudicial than probative and was cumulative because the mother had already testified about the extent of the injuries. Even though injuries have been graphically described, it is not necessarily an abuse of discretion to allow photographs depicting the injuries. <u>State v. Brown</u>, 836 S.W.2d 530, 531 (Tenn. 1992). The photograph complained of was relevant to assist in establishing serious bodily injury. The defendant remarked in his opening statement that the injuries sustained by the victim were as a result of his falling and hitting his head on the curb. The trial court did not abuse its discretion in admitting the photograph of the victim after the altercation in order to show serious bodily injury and rebut the defendant's claim that the injuries were caused by a fall. We cannot conclude that the trial court abused its discretion in finding that the probative value of the photograph outweighed any prejudicial effect. This issue is without merit.

## III. Sentencing

The defendant contends on appeal that the trial court erred in denying him alternative sentencing. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and

circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court should consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the section 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d at 438.

With certain statutory exceptions, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

After reviewing the record, we conclude that the trial judge considered the sentencing principles and all relevant facts and circumstances; therefore, our review is *de novo* with a presumption of correctness. As a Range I offender, the applicable range for the Class C felony committed by the defendant is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). The trial court enhanced the sentence from three to five years based on the presence of four enhancement factors and no mitigating factors. See id. -210(d). The defendant does not challenge the trial court's findings concerning the applicability of enhancement and mitigating factors. The trial court ordered the sentence to be served in the TDOC based on two grounds. First, the court found that confinement is necessary to avoid depreciating the seriousness of the offense. See id. -103(1)(B). For this provision to apply, the circumstances of the offense "as committed, must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring probation." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991).

The evidence established that the perpetrators of this aggravated assault kicked the victim's head against a concrete curb as he was unconscious on the ground. As noted above, the victim testified that he sustained numerous injuries including a broken jaw in two different places, a broken nose, a black eye, a gash on the back of his head, a cut ear, and the inside of his mouth was lacerated and torn. The victim underwent over four hours of reconstructive surgery to his jaw. Four metal plates and wire mesh were permanently implanted into the victim's jaw. His mouth was completely wired shut for approximately two months, during which time he had to ingest food through a straw. He said that he was in excruciating pain, had constant headaches, and had trouble breathing. The victim stated that he was in constant pain for about seven weeks and lost thirty pounds. We conclude that the aggravated assault committed by the defendant was especially violent and reprehensible. The trial court did not err in finding that confinement is necessary to avoid depreciating the seriousness of the offense.

Second, the trial court also found that any form of alternative sentence should be denied because there is a need for deterrence to others likely to commit similar offenses. See Tenn. Code Ann. § 40-35-103(1)(B). The Tennessee Supreme Court has held:

> [A] trial court's decision to incarcerate a defendant based on a need for deterrence [will be presumed to be correct] so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

State v. Hooper, 29 S.W.3d 1, 10 (Tenn. 2000).  To determine whether there is a need for deterrence, the following nonexclusive list of factors should be considered:  (1) whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or state as a whole; (2) whether the crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from criminal behavior; (3) whether the alleged offense received substantial publicity beyond that normally expected in a typical case; (4) whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and (5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.  Id. at 10-12.  "[A] court need not find that all of these factors are present before ordering incarceration based on a need to deter similar crimes."  Id. at 12.  The court found that there was a need for deterrence based on the following factors:  the increasing number of assaults and aggravated assaults "coming through the court," the crime was committed as a result of intentional conduct, the defendant encouraged others in achieving a criminal objective, and there was substantial publicity in this case beyond that in a typical case.  The record adequately supports a finding that denial of any form of alternative sentence was appropriate in this case based on the need for deterrence.  The defendant is not entitled to relief on this issue.

**Conclusion**

Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE